## IN THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY, MARYLAND

| | |
|---|---|
| **DANIEL JARRELLS**<br>2637 April Dawn Way<br>Odenton, Maryland 21113, | |
| **Plaintiff,**<br>v. | **Case No. C-02-CV-20-001468** |
| **ANNE ARUNDEL COUNTY,<br>MARYLAND**<br>2660 Riva Road<br>Annapolis, Maryland 21401 | **Jury Trial Demanded** |
| **and** | |
| **JOSHUA SHAPIRO, individually and in<br>his capacity as an officer of the Anne<br>Arundel County Police Department**<br>8945 Veterans Highway<br>Millersville, MD 21108 | |
| **and** | |
| **DANIEL REYNOLDS, individually and in<br>his capacity as an officer of the Anne<br>Arundel County Police Department**<br>8945 Veterans Highway<br>Millersville, MD 21108 | |
| **and** | |
| **JOSHUA STINCHCOMB, individually<br>and in his capacity as an officer of the<br>Anne Arundel County Police Department**<br>8945 Veterans Highway<br>Millersville, MD 21108**,** | |
| **Defendants.** | |

## FIRST AMENDED COMPLAINT AND JURY DEMAND

Plaintiff Daniel Jarrells, through the undersigned counsel, sues Defendants Anne Arundel

County, Maryland; Joshua Shapiro, individually and in his capacity as an officer of the Anne

Arundel County Police Department; Daniel Reynolds, individually and in his capacity as an officer of the Anne Arundel County Police Department; and Joshua Stinchcomb, individually and in his capacity as an officer of the Anne Arundel County Police Department and complains as follows:

## INTRODUCTION

Daniel Jarrells, a young African-American man, was stopped without any legitimate probable cause by officers of the Anne Arundel County Police Department. In their report immediately after the stop, the police did not even attempt to invent a pretext for the stop; months later, officers claimed that Daniel was "suspicious" because he was driving a two-door vehicle with a Lyft sticker on it. This "suspicious" sticker was apparently the most plausible justification the officers could invent for following Daniel, pulling him over, ordering him out of the car at gunpoint, handcuffing him, searching him, and placing him in a police vehicle, all without ever giving Daniel an explanation of why or for what he was under arrest.

Shortly after placing him into the police vehicle with no explanation, officers pulled Daniel out of the vehicle and threw him to the ground. Officers claimed it was necessary to violently tackle Daniel because he was "resisting arrest," but video taken by a neighbor shows this claim to be false. As Daniel lay handcuffed and helpless on the ground, one of the officers, Daniel Reynolds, kneeled on Daniel's neck, and at one point slammed his knee into Daniel's prone body, and also pushed Daniel's face into the ground, injuring him, and presenting a serious and unjustified risk of injury or death:



The officers' violent and dangerous actions toward Daniel were not justified by any police or public safety necessity. After arresting Daniel, and taking him to the hospital for treatment of abrasions caused by the officers' assault, the officers charged Daniel with minor offenses, none of which had any basis in law and all of which were later dismissed as *nolle prosequi*.

Daniel brings this suit to recover for the Anne Arundel County Police Department's violation of his civil rights. Daniel also seeks an injunction compelling Anne Arundel County to adopt a general order preventing its officers from using potentially lethal force on handcuffed

arrestees unless necessary to protect the life and safety of officers or of the public, which was not the case here.

## PARTIES

1.      Plaintiff Daniel Jarrells is the aggrieved party in this suit and is an adult citizen of Anne Arundel County, Maryland.

2.      Defendant Anne Arundel County, Maryland (the "County") is a municipal corporation organized under Article XI-A of the Maryland Constitution. The County organizes, operates, and maintains the Anne Arundel County Police Department (AAPD), the primary law enforcement agency in the County.

3.      Defendant Detective Joshua Shapiro is an officer of the AAPD and an agent and employee of the County. Plaintiff sues Detective Shapiro in his official and individual capacities.

4.      Defendant Detective Daniel Reynolds is an officer of the AAPD and an agent and employee of the County. Plaintiff sues Detective Reynolds in his official and individual capacities.

5.      Defendant Detective Joshua Stinchcomb (collectively with Defendants Shapiro and Reynolds, the "Detectives") is an officer of the AAPD and an agent and employee of the County. Plaintiff sues Detective Stinchcomb in his official and individual capacities.

## JURISDICTION AND VENUE

6.      The Court has jurisdiction over this action pursuant to Md. Code, Cts. & Jud. Proc § 1-501.

7.      Venue is proper in this Court pursuant to Md. Code, Cts. & Jud. Proc. § 6-201 because all Defendants reside or are employed in Anne Arundel County.

**NOTICE**

8.      To the extent that certain of Plaintiff's claims are governed by provisions of the Maryland Tort Claims Act and/or the Local Government Tort Claims Act, Plaintiff provided notice of his claims to Defendants on December 9, 2019.

**FACTS COMMON TO ALL COUNTS**

9.      On February 14, 2019, Plaintiff Daniel Jarrells was driving his friend's car while en route to his mother's house in Gambrills, Maryland.

10.      Lamar Redfield, another friend of Daniel's, was in the passenger's seat.

11.      Daniel and Lamar came to an intersection and pulled up next to an unmarked black SUV operated by Defendants, Detectives Joshua Shapiro and Daniel Reynolds of the AAPD.

12.      Both Detectives are white. Both Daniel and Lamar are African-American.

13.      The unmarked SUV was revving its engine and swerving into the lane next to Daniel and Lamar. The SUV slammed on its breaks and got in the lane behind them.

14.      Although Daniel was operating the car safely and lawfully, Detectives Reynolds and Shapiro, after noticing Daniel and Lamar in the vehicle next to them, chose to follow him.

15.       The Statement of Probable Cause, written the day after the incident does not offer a reason for Detectives Reynolds and Shapiro's decision to follow Daniel, stating only that they "attempted to make a traffic stop."

16.      However, Detectives Reynolds and Shapiro followed Daniel for approximately two miles before they attempted a stop.

17.      In his report, Detective Shapiro claimed that the reason the detectives began following Daniel was because the vehicle "displayed a Lyft [ride-sharing service] sticker in the

front and rear windshield," which was "suspicious considering Lyft requires a four door vehicle."

18.     Detective Shapiro did not explain what "suspicious" or illegal activity the Lyft sticker could possibly have indicated.

19.     Detectives Reynolds and Shapiro followed Daniel until they obtained a pretext for pulling the vehicle over. Detective Shapiro's report does not say what this pretext was, only that the Detectives "attempted to conduct a traffic stop."

20.     In the report, Detective Shapiro claimed that the basis for the stop was that they "paced" Daniel's car over the speed limit, and/or that Daniel stopped the vehicle at a stop sign with his tires in front of the white line.

21.     After Detectives Reynolds and Shapiro turned their sirens on as Daniel turned on to Maytime Drive, Daniel proceeded at a low speed and turned his flashers on, so that he could pull over in front of his mother's home, which was very close, and not on a street where he did not know anyone. Daniel was concerned about the aggressive behavior from the driver of the SUV. Once he arrived at his mother's home, he stopped the car.

22.     Section 21-904 of the Transportation Article of the Maryland Annotated Code provides that, "[i]f a police officer gives a visual or audible signal to stop and the police officer, whether or not in uniform, is in *a vehicle appropriately marked as an official police vehicle*, a driver of a vehicle may not attempt to elude the police officer by: (1) Willfully failing to stop the driver's vehicle." Md. Code Ann., Trans. § 21-904(c)(1) (Emphasis supplied.)

23.     The County acknowledged at Lieutenant Timothy Schultz's deposition that the SUV that Detectives Reynolds and Shapiro were driving did not have any of the markings on it

that other police department vehicles, referred to as "marked cruisers," have, such as blowups of a badge or any writing:

> Q. All right. And the vehicle that Reynolds and Shapiro were driving had none of those markings that I've just referred to that are on the doors of the marked cruisers, correct?
>
> A. It did not.

(Schultz Dep. Tr., at 73-74).

24.     Lieutenant Schultz testified that Detective Reynolds and Shapiro were driving an unmarked vehicle:

> Q. And you would agree that this was an unmarked car, correct, that Reynolds and Shapiro were in?
>
> A. Correct.

(Schultz Dep. Tr., at 75). Despite this, the County has taken the position that such unmarked vehicles are considered a "vehicle appropriately marked as an official police" under § 21-904(c)(1) of the Transportation Article, and this is an unconstitutional pattern and practice which violates state law

25.     The State's Attorney's Office has publicly stated that placing Mr. Jarrells under arrest for fleeing and eluding was not an arrestable offense as the officers were not in a marked police vehicle and were not in uniform.

26.     After Daniel stopped, Detectives Reynolds and Shapiro jumped out of their vehicle and immediately drew their guns, pointing them at Daniel and Lamar. Neither Daniel nor Lamar posed any threat to officer safety or engaged in any conduct which would in any way suggest that they posed any dangers to the officers or the public.



27.    In his report, Detective Shapiro claims that the detectives drew their guns because of Daniel's "suspicious driving behavior," his "attempt to elude the traffic stop," and their claimed knowledge that the car's owner—not Daniel—had been arrested for weapons and drug charges.

28.    After Detectives Reynolds and Shapiro ordered Daniel and Lamar out of the car at gunpoint, Detective Shapiro detained Lamar. Meanwhile, Detective Reynolds approached the car and grabbed Daniel's arm through the window, at which point he holstered his firearm, drew his TASER stun device, and told Daniel to "get out of the car or I'm gonna Tase you."

29.     Daniel exited the car. Both he and Lamar were placed in handcuffs, and Daniel was searched. Neither man was told why they had been pulled over, why they had been ordered out of the car at gunpoint, or why they were under arrest.

30.     Around this time, Detectives Stinchcomb and Brian Ranck arrived, even though Detective Reynolds and Shapiro had not called for any back-up. Detective Reynolds transferred custody of Daniel to Detective Ranck. Daniel was then placed in the front seat of Detective Stinchcomb's vehicle. Shortly afterward, however, the Detectives Reynolds, Ranck, and Stinchcomb pulled Daniel out of the vehicle.

31.     In his report, Detective Shapiro claimed that Daniel was removed from the vehicle because he was "kicking the window attempting to break it out." Daniel made no such attempt, and photographs of the vehicle taken by Detective Ranck show no damage to the window or vehicle. There was no reason that Daniel needed to be removed from the vehicle.

32.     Detectives Ranck and Reynolds, along with Detective Stinchcomb, hauled Daniel out of the vehicle, and Detectives Reynolds and Ranck threw him to the ground. The Detectives later claimed this takedown was necessary because Daniel "resisted arrest by flailing his arms and body"; they did not explain how it was possible for Daniel to "flail his arms" while in handcuffs.

33.     It was not necessary for Detectives Reynolds and Ranck to throw Daniel to the ground. They could have instead kept him in a standing position after removing him from the vehicle.

34.     Moreover, video taken by a neighbor belies the Detectives' explanation. It shows Detectives Reynolds and Ranck pulling Daniel out of the vehicle and immediately throwing him down. Daniel had no opportunity to "resist arrest" even had he been so inclined:

9





35.     After the detectives took Daniel to the ground, Detective Reynolds put his knee in

the back of Daniel's neck as he lay face down on the pavement. Detective Reynolds wrote in his

report that he put his knee on Daniel's shoulder, but the video shows Detective Reynolds's account to be false.

36.     As Daniel lay on the ground with Detective Reynolds's knee on his neck, he attempted to shift his weight so that he could lie flat on his stomach instead of partially on his side, due to the discomfort that the restraint was causing. He also called out to his mother, telling her that the Detectives had pulled their guns on him for no reason.

37.     Detective Ranck was standing over Daniel and witnessed Detective Reynolds' knee on Daniel's neck, but did nothing to stop Detective Reynolds.

38.     When Daniel shifted, Detective Reynolds responded by grabbing Daniel's head and then slamming his knee into the back of Daniel's neck and slamming Daniel's head into the ground.

39.     Detective Reynolds does not dispute that he pushed Mr. Jarrells' head into the ground:

Q. Did there come a time that you grabbed his head, Mr. Jarrells'?

A. Yes, I did attempt to control his head, yes.

Q. And you pushed his head into the ground; isn't that correct?

A. I did push his head down, yes.

(Reynolds Dep. Tr., at 183-84). He testified that it was possible that the injuries to Daniel's face were caused by him pushing Daniel's head into the ground. (*Id.* at 194). Detective Reynolds has acknowledged under oath that this use of force was excessive and unreasonable.

40.     Detective Ranck was standing right next to Daniel and observed this occur but did nothing to stop Detective Reynolds or to check if Daniel was injured.

41.     Detective Reynolds's knee strike on Daniel's neck was an excessive use of force, intended to inflict punishment and pain and not for any legitimate law enforcement purpose.

42.      Strikes to the back of the neck risk causing damage to the cervical spine.

43.     The County has admitted that Detective Reynolds applied force to Daniel's head and neck area and that Detective Reynolds' conduct in placing his knee in Daniel's head and neck area was an unnecessary use of force.  The County has admitted that Detective Reynolds' application of force to Daniel's head and neck area was also unreasonable. Lieutenant Schultz testified as follows on behalf of Anne Arundel County:

> Q. So is it the department's position in this litigation that Reynolds' application of force from his knee to his head and neck area of Jarrells was both unreasonable and unnecessary?
>
> MR. KARPINSKI: Objection.
>
> MR. CULPEPPER: Objection. You can answer.
>
> A. Yes. Correct.

(Schultz Dep. Tr., at 43-44).

44.     Detective Reynolds' conduct in placing his knee in Daniel's head and neck area is not a maneuver taught in the Academy.

45.     The County has admitted that Mr. Jarrells did not appear to be a threat when he was on the ground, as he was handcuffs and was not engaging in any violent maneuvering on the ground.

46.     Detective Reynolds's conduct in slamming Daniel's head into the ground was an excessive use of force, intended to inflict punishment and pain and not for any legitimate law enforcement purpose. Lieutenant Schultz testified:

> Q. All right. In addition to the force you've just described involving Reynolds applying his knee to the head and neck area, was there any other force either by Reynolds or any

other officer which the Internal Affairs department division found to be unnecessary or unreasonable?

MR. KARPINSKI: Objection.

MR. CULPEPPER: Objection. You can answer.

A.  Yes. So moments after that, Detective Reynolds also was observed on the video grabbing Mr. Jarrells' hair and at the same time, subsequently, pushing his head into the pavement. And at that time, it appeared clear from the investigation that he sustained an injury to his face. And, regardless, during the investigation and during the video, you could hear Mr. Jarrells make a statement, why you got to slam my head into the ground?

And based on those factors, the totality of the investigation and the circumstances, we also brought charges against him for similar – charges for use of force, unnecessary force, in the same circumstances. And it was conduct unbecoming and use of force.

(Schultz Dep. Tr,. at 48-49).

47.     Lieutenant Schultz testified as follows on behalf of Anne Arundel County:

Q. And is it the position of Anne Arundel County in this litigation that Officer Reynolds' use of force and grabbing Mr. Jarrells by the hair and pushing his face into the ground was unreasonable and unnecessary use of force?

A. Yes.

(Schultz Dep. Tr., at 50).

48.     The County has admitted that Mr. Reynolds' conduct in grabbing Daniel by the hair and pushing Daniel's face into the ground was an unreasonable and unnecessary use of force.

49.     Daniel asked why Detective Reynolds was using such extreme force, and yelled to his mother to contact an attorney. Daniel then yelled to Detective Reynolds that there was no reason to slam his head into the ground, because "I'm in fuckin' handcuffs." Detective Reynolds yelled back for Daniel to "Shut the fuck up." Daniel responded, "Fuck you," to which Detective Reynolds yelled "Fuck you!"

50.     As Detective Reynolds and Daniel yelled at one another, Detective Stinchcomb came over and twisted Daniel's legs, then kneeled on his legs. When Daniel protested, Detective Reynolds put his full weight on Daniel's back and neck:



51.     It was unreasonable and unnecessary force for Detective Stinchcomb to bend Daniel's legs and twist Daniel's ankles. Detective Stinchcomb's conduct in twisting Daniel's ankles is not a tactic that is taught in the Anne Arundel County Police Department Academy.

52.      The County has admitted that Daniel was not significantly moving his feet or legs in any manner that would be threatening to an officer's safety.

53.     Detective Reynolds and the other detectives knew or should have known that officers should refrain from striking or kneeing suspects in the neck or keeping their knee on the

suspects' head or neck due to the risk of serious and even life-threatening injuries. This use of force can potentially block the suspects' airways and ability to breathe, and can cause a broken neck and paralysis.

54.     Daniel called out again for his mother, to which Detective Reynolds responded by screaming at Daniel to "Shut up!"

55.     When Daniel stated that "I can't even breathe," Detective Reynolds responded dismissively, "You can breathe."

56.     Detective Reynolds also yelled at Daniel, "You're a bitch."

57.     The County has admitted that Detective Reynolds' conduct in calling Daniel a "bitch" and telling him to "shut the fuck up," violated the police department's policies.

58.     Detective Reynolds held Daniel against the pavement for several minutes, repeatedly yelling at him and slamming him into the ground.

59.     While Daniel fortunately did not suffer the kinds of serious or fatal injuries that could have resulted from Detective Reynolds's excessive and unjustified use of force, he did suffered abrasions on his face, for which he was treated at the hospital.

60.     The Detectives later claimed that Daniel had "dragged his face across the pavement" of his own accord.

61.     Daniel was arrested without probable cause and strip searched. The Detectives claimed that the strip search was "based on the vehicle's failure to stop," but did not allege that they had any reason to believe that Daniel was hiding a weapon or a controlled substance on his body. Notably, the Detectives had already frisked Daniel and searched his clothing when they initially placed him in handcuffs.

62.     The officers also brought a drug dog to search the vehicle, again without any reason to suspect any wrongdoing.

63.     Daniel was charged with disorderly conduct, resisting arrest, and, after the dog found CBD oil with a THC content of less than one-half of one percent in his friend's vehicle, possession of a controlled dangerous substance.

64.     The Detectives did not have and could not have had reasonable suspicion of any of the charged crimes.

65.     All of the charges against Daniel were disposed as *nolle prosequi*.

66.     An internal affairs investigation was opened as to Detective Reynolds and he was suspended while the investigation was pending.

67.     At this same time, then-Police Chief Timothy Altomore resigned on July 22, 2020, specifically stating that he did not wish to be a part of police reforms sought by this lawsuit to limit excessive force.

68.     A trial board hearing—created by the now-substantially modified and/or-repealed Law Enforcement Officers' Bill of Rights (LEOBR)—was held on July 14 and 15, 2021. Detective Reynolds was charged with applying unnecessary force in placing his knee in Daniel's head and neck area; applying unnecessary force for slamming Daniel's head into the ground; conduct unbecoming of an officer; and a courtesy violation for using obscene language and cursing at Daniel.

69.     The trial board found Detective Reynolds guilty of excessive force and conduct unbecoming of an officer as it relates to slamming Daniel's head into the ground and the courtesy violation for obscene language. The trial board found him not guilty of the charges related to kneeling on Daniel's neck.

70.     The trial board made a recommendation to suspend Detective Reynolds for 25 days and required him to attend an anger management program and a crisis intervention training assistance program. Before the LEOBR trial board hearing, the Anne Arundel County Police Chief had agreed to approve any recommendation of the trial board.

71.     County Executive Steuart Pittman publicly stated in a Facebook post in February 2021, shortly before the trial board hearing was initially scheduled: "An Administrative Trial Board starts Wednesday to determine the consequences of a police action that to my untrained eye observing an onlookers' video appears to be excessive force. The front-page photo of the incident showed the white officer's knee on or near the neck of a handcuffed Black man lying on the ground." He also wrote: "You may not agree with the people who will demand that this officer be fired, but at least listen to them. They are justified in not wanting themselves or their own family member to end up in the same position after a traffic stop."

72.     After the trial board hearing, County Executive Pittman released a statement expressing his disappointment that Detective Reynolds was not terminated, even though that had been the recommendation of the former Acting Police Chief:

> I was disappointed that the trial board did not uphold our former Acting Police Chief's decision to dismiss Officer Reynolds. No chief makes the decision to dismiss an officer lightly, but our department is very serious about enforcing its policies on the use of excessive force.
>
> The Law Enforcement Officer's Bill of Rights allows an officer to appeal under these circumstances, and this officer exercised that right. It is the obligation of our department to do even better in our de-escalation training, and to prevent the use of excessive force in the future. Body cameras will help. Training will help. Allowing police chiefs to dismiss officers who do not meet department standards would help as well, and we must work toward that end.

73.     Despite County Executive Pittman's public statements, his administration was unable to effectively discipline Detective Reynolds and his newly appointed chief of police

17

elected only to impose a 25-day suspension despite having the statutory authority to impose a more severe punishment or termination. The actions of the County Executive's appointee, who serves at his pleasure, belie the public statements made by Pittman about this use of force. The level of discipline imposed makes it clear that the County Administration does not view the use of the knee on the neck or forcing plaintiff's head into the ground as a serious offense, and sends a message to county's sworn officers that this misconduct will not be treated seriously.

### COUNT 1
**Article 24 of the Maryland Declaration of Rights – Excessive Force**
**(Plaintiff v. Defendant Anne Arundel County, Daniel Reynolds, and Joshua Stinchcomb)**

74. Plaintiff incorporates and realleges the foregoing paragraphs as if fully set forth herein.

75. Detectives Reynolds and Stinchcomb used unreasonable and unnecessary force in the treatment of Plaintiff, thereby injuring him as alleged above in violation of his rights to due process and to be free from excessive force and unreasonable seizure, as protected by Article 24 of the Maryland Declaration of Rights.

76. Detectives Reynolds and Stinchcomb's actions were without provocation or legal justification and were undertaken on the basis of race, ethnicity, and/or other protected characteristics and with the intent to violate Plaintiff's civil rights, including but not limited to his rights under Article 24.

77. Detectives Reynolds and Stinchcomb were at all relevant times acting as agents of and within the scope of their employment by the County.

78. As a result of Detectives Reynolds and Stinchcomb's actions, Plaintiff suffered damages, including but not limited to pain and suffering, assault, battery, mental and emotional distress, and deprivation of constitutional rights.

WHEREFORE, Plaintiff demands judgment against Defendants Anne Arundel County, Maryland; Daniel Reynolds, individually and in his capacity as an officer of the Anne Arundel County Police Department; and Joshua Stinchcomb, individually and in his capacity as an officer of the Anne Arundel County Police Department in an amount exceeding $75,000, plus interest, the costs of this action, attorneys' fees, and such other and further relief as this Court deems just and proper under the circumstances.

## COUNT 2
**Article 26 of the Maryland Declaration of Rights**
**Excessive Force and Deprivation of Liberty**
**(Plaintiff v. Defendant Anne Arundel County, Daniel Reynolds, and Joshua Stinchcomb)**

79.     Plaintiff incorporates and realleges the foregoing paragraphs as if fully set forth herein.

80.     By the actions detailed above, Detectives Reynolds and Stinchcomb deprived Plaintiff of his rights under Article 26 of the Maryland Declaration of Rights, including but not limited to the right to freedom from unlawful seizure and the right to bodily integrity.

81.     Detectives Reynolds and Stinchcomb's actions were without provocation or legal justification and with the intent to violate Plaintiff's civil rights, including but not limited to his rights under Article 26.

82.     Detectives Reynolds and Stinchcomb were at all relevant times acting as agents of and within the scope of their employment by the County.

83.     As a result of Detectives Reynolds and Stinchcomb's actions, Plaintiff suffered damages, including but not limited to pain and suffering, assault, battery, mental and emotional distress, and deprivation of constitutional rights.

WHEREFORE, Plaintiff demands judgment against Defendants Anne Arundel County, Maryland; Daniel Reynolds, individually and in his capacity as an officer of the Anne Arundel

County Police Department; and Joshua Stinchcomb, individually and in his capacity as an officer of the Anne Arundel County Police Department in an amount exceeding $75,000, plus interest, the costs of this action, attorneys' fees, and such other and further relief as this Court deems just and proper under the circumstances.

**COUNT 3**
**Battery**
**(Plaintiff v. Defendant Anne Arundel County, Daniel Reynolds, and Joshua Stinchcomb)**

84.     Plaintiff incorporates and realleges the foregoing paragraphs as if fully set forth herein.

85.     Detectives Reynolds and Stinchcomb repeatedly and intentionally contacted Plaintiff in a harmful and offensive manner as described above.

86.     Plaintiff did not consent to any of these contacts.

87.     The contacts were not justified by any legitimate police necessity.

88.     Detectives Reynolds and Stinchcomb undertook these contacts deliberately, with ill will and actual malice.

89.     During the commission of the foregoing acts, Detectives Reynolds and Stinchcomb were acting as agents of and within the scope of their employment by the County.

90.     As a result of Reynolds and Stinchcomb's actions, Plaintiff suffered damages, including but not limited to pain and suffering, assault, battery, mental and emotional distress, and deprivation of constitutional rights.

WHEREFORE, Plaintiff demands judgment against Defendants Anne Arundel County, Maryland; Daniel Reynolds, individually and in his capacity as an officer of the Anne Arundel County Police Department; and Joshua Stinchcomb, individually and in his capacity as an officer of the Anne Arundel County Police Department, in an amount exceeding $75,000, plus interest,

the costs of this action, attorneys' fees, and such other and further relief as this Court deems just and proper under the circumstances.

## COUNT 4
### False Arrest
### (Plaintiff v. All Defendants)

91.     Plaintiff incorporates and realleges the foregoing paragraphs as if fully set forth herein.

92.     The Detectives deprived Plaintiff of his liberty and freedom of movement.

93.     Plaintiff did not consent to this deprivation, and it was without any legal justification or legitimate police necessity.

94.     Detective Reynolds and Detective Shapiro followed Plaintiff in an unmarked vehicle yet arrested him for fleeing and eluding. The County has taken the position that unmarked vehicles are considered to be a "vehicle appropriately marked as an official police" under § 21-904(c)(1) of the Transportation Article." However, arresting Mr. Jarrells for fleeing and eluding when the officers were in an unmarked vehicle, and arresting other individuals for fleeing and eluding from an unmarked vehicle, is a violation of the statute.

95.     During the commission of the foregoing acts, the Detectives were acting as agents of and within the scope of their employment by the County.

96.     As a result of the Detectives' actions, Plaintiff suffered damages, including but not limited to pain and suffering, assault, battery, mental and emotional distress, and deprivation of constitutional rights.

WHEREFORE, Plaintiff demands judgment against Defendants Anne Arundel County, Maryland; Joshua Shapiro, individually and in his capacity as an officer of the Anne Arundel County Police Department; Daniel Reynolds, individually and in his capacity as an officer of the

Anne Arundel County Police Department; and Joshua Stinchcomb, individually and in his capacity as an officer of the Anne Arundel County Police Department, in an amount exceeding $75,000, plus interest, the costs of this action, attorneys' fees, and such other and further relief as this Court deems just and proper under the circumstances.

## COUNT 5
### False Imprisonment
### (Plaintiff v. All Defendants)

97.     Plaintiff incorporates and realleges the foregoing paragraphs as if fully set forth herein.

98.     The Detectives restrained Plaintiff, depriving him of his liberty.

99.     Plaintiff did not consent to this deprivation.

100.    As the Detectives did not have reasonable suspicion of any crime at the time that they restrained Plaintiff, there was no legal authority or justification for the restraint.

101.    During the commission of the foregoing acts, the Detectives were acting as agents of and within the scope of their employment by the County.

102.    As a result of the Detectives' actions, Plaintiff suffered damages, including but not limited to pain and suffering, assault, battery, mental and emotional distress, and deprivation of constitutional rights.

WHEREFORE, Plaintiff demands judgment against Defendants Anne Arundel County, Maryland; Joshua Shapiro, individually and in his capacity as an officer of the Anne Arundel County Police Department; Daniel Reynolds, individually and in his capacity as an officer of the Anne Arundel County Police Department; and Joshua Stinchcomb, individually and in his capacity as an officer of the Anne Arundel County Police Department, , in an amount exceeding

$75,000, plus interest, the costs of this action, attorneys' fees, and such other and further relief as this Court deems just and proper under the circumstances.

**COUNT 6**
**Intentional Infliction of Emotional Distress**
**(Plaintiff v. All Defendants)**

103.    Plaintiff incorporates and realleges the foregoing paragraphs as if fully set forth herein.

104.    The Detectives' conduct as described above was intentional.

105.    The Detectives' actions—pulling over Plaintiff without any reasonable suspicion of a crime, pointing their guns at him after stopping him for no reason, threatening to use a stun control device on him; detaining him without any probable cause; pressing a knee into Plaintiff's neck, and slamming his head into the ground as he lay handcuffed and helpless—were extreme and outrageous.

106.    As a result of this wrongful conduct, Plaintiff suffered severe emotional distress.

107.    During the commission of the foregoing acts, the Detectives were acting as agents of and within the scope of their employment by the County.

108.    As a result of the Detectives' actions, Plaintiff suffered damages, including but not limited to pain and suffering, assault, battery, mental and emotional distress, and deprivation of constitutional rights.

WHEREFORE, Plaintiff demands judgment against Defendants Anne Arundel County, Maryland; Joshua Shapiro, individually and in his capacity as an officer of the Anne Arundel County Police Department; Daniel Reynolds, individually and in his capacity as an officer of the Anne Arundel County Police Department; and Joshua Stinchcomb, individually and in his capacity as an officer of the Anne Arundel County Police Department, in an amount exceeding

$75,000, plus interest, the costs of this action, attorneys' fees, and such other and further relief as this Court deems just and proper under the circumstances.

**COUNT 7**
**Article 26 of the Maryland Declaration of Rights**
**Unconstitutional Policy and/or Training Authorizing**
**Use of Force On or Near Airways of Restrained Suspects**
**(Plaintiff v. Defendant Anne Arundel County)**

109.    Plaintiff incorporates and realleges the foregoing paragraphs as if fully set forth herein.

110.    By the actions detailed above, the Detectives deprived Plaintiff of his rights under Article 26 of the Maryland Declaration of Rights, including but not limited to the right to freedom from unlawful seizure and the right to bodily integrity.

111.    While the Detectives violated Plaintiff's constitutional rights by using excessive force against him, Anne Arundel County committed a separate and distinct violation of Plaintiff's constitutional rights by authorizing, permitting, and/or allowing the use of force and/or restraint of Plaintiff's neck on or near his airway when Plaintiff did not pose a risk of deadly force and he was restrained by handcuffs.

112.    Additionally, Anne Arundel County violated Plaintiff's constitutional rights when it trained and/or permitted its officers to use a "knee strike" in the neck area of arrestees.

113.    On June 9, 2020, AAPD Chief Timothy J. Altomare released a list of "Frequently Asked Questions" about the AAPD's use of force, in response to widespread protests and attention to police use of force, and particularly to strikes and restraints to the neck, following the murder of George Floyd by officers of the Minneapolis, Minnesota police department.

114.    In the FAQ, Chief Altomare states that the AAPD "does not teach any type of neck restraint," considers "force to the head and neck" to be "deadly force," and that AAPD officers are "trained throughout our entire career to avoid impacting or restricting the neck."

115.    Chief Altomare also claimed that the only circumstance under which a neck restraint is permissible is during the "active defense of human life in which no other option exists."

116.    Despite Chief Altomare's claims to the public, however,  the AAPD's Use of Force Policy, IC 401, is silent as to neck restraints or strikes to the neck, and mentions knee strikes only in passing as a "use of force" requiring a report. Altomore resigned on July 22, 2020, specifically stating that he did not wish to be a part of police reforms sought by this lawsuit to limit excessive force.  As the Anne Arundel Patch reported the next day:

> He is more concerned with Jarrells' demand for a court order to limit police force. If accepted, this order would ban on the use of unnecessary force against already-handcuffed people.
>
> "The flock needs protecting, the sheepdogs do that when the wolf shows up," Altomare wrote. "I am a sheepdog and I will not apologize for it. If society takes the teeth from its sheepdogs, there is simply more sheep for the slaughter."

117.    Anne Arundel County had no articulated policy or general order prohibiting an officer from placing his or her knee on someone's neck. It was not until after this incident, in which excessive force was used against Daniel, and the Anne Arundel County Police Chief at the time, Timothy Altomare, resigned that a policy prohibiting officers from kneeing on individuals' necks was adopted.

118.    Moreover, the Detectives clearly were not "actively defending human life" when they followed Plaintiff without cause, pulled Plaintiff over in a pretextual stop, ordered Plaintiff out of the vehicle at gunpoint despite having no reason to believe that Plaintiff posed any sort of

threat at all—much less one requiring lethal force—threatened to Tase Plaintiff, arrested Plaintiff without suspicion of any crime, hauled Plaintiff out of the police vehicle where they had placed him, slammed him onto the ground facedown and in handcuffs, and—while Plaintiff was still restrained by handcuffs—used a knee to strike and restrain Plaintiff's neck.

119.     Contrary to Chief Altomare's assurance in the FAQ that officers are required to stop and report any excessive force, none of the other officers on scene put a stop to or reported Detective Reynolds's use of knee strikes and restraints to Plaintiff's neck. Additionally, Anne Arundel's policy and practice does not require individual officers to report their use of force. Instead, where multiple officers are involved in the use of force, only one of the participating officer fills out an online form for all of the officers who used force.  Moreover, the practice of the Anne Arundel County Police Department is not to file a use of force report when the office perceives that the subject of the force was not seriously injured.

120.     Moreover, on information and belief, no member of the AAPD, either on scene or after the fact, requested or demanded that Officer Reynolds or any of the four officers on scene explain the use of force, despite the fact that the Detectives stated in multiple arrest reports that they had used physical force to subdue Plaintiff, the fact that Plaintiff had been taken to the hospital, and the fact that photographs of Plaintiff in the AAPD's arrest file taken at the hospital clearly show lacerations and abrasions to Plaintiff's face.

121.     The use of force report completed by Detective Ranck failed to accurately reflect the use of force against Daniel. As the chain-of-command review made clear in this case, there is no meaningful oversight of the use of force.  Indeed, the Department in this case did not react to the use-of-force until news media publicized the event a year later.

122.   Despite Chief Altomare's statement, the AAPD has no policy or procedure, written or unwritten, that restricts the use of knee strikes to or the restraint of an arrestee's neck.

123.   In the alternative, any such policy that the AAPD does have is neither sufficiently taught nor adequately enforced.

124.   AAPD officers are trained, authorized, and/or permitted to use knee strikes and restraints to an arrestee's neck area, despite the risk of serious injury or death publicly acknowledged by Chief Altomare.

125.   The Detectives used unreasonable and unnecessary force in the treatment of Plaintiff, thereby injuring him as alleged above in violation of his rights to due process and to be free from excessive force and unreasonable seizure, as protected by Article 26 of the Maryland Declaration of Rights.

126.   During the commission of the foregoing acts, the Detectives were acting as agents of and within the scope of their employment by the County.

127.   Detective Reynolds and Detective Shapiro followed Plaintiff in an unmarked vehicle yet arrested him for fleeing and eluding. The County has taken the position that unmarked vehicles are considered to be a "vehicle appropriately marked as an official police" under § 21-904(c)(1) of the Transportation Article." However, arresting Mr. Jarrells for fleeing and eluding when the officers were in an unmarked vehicle, and arresting other individuals for fleeing and eluding from an unmarked vehicle, is a violation of the statute.

128.   Detective Reynolds and Detective Shapiro pursued Daniel's vehicle and did not disengage or discontinue their efforts to follow the BMW after they believed that the BMW was avoiding apprehension, in violation of Index Code 1650.

129.    As a result of the Detectives' actions, Plaintiff suffered damages, including but not limited to pain and suffering, assault, battery, mental and emotional distress, and deprivation of constitutional rights.

WHEREFORE, Plaintiff demands judgment against Defendant Anne Arundel County, Maryland in an amount exceeding $75,000, as well as injunctive relief 1) enjoining Defendant Anne Arundel County from training, authorizing, permitting, or allowing the use of knee strikes in the neck area of arrestees; 2) enjoining Defendant Anne Arundel County from training, authorizing, permitting, or allowing its officers to restrain an arrestee's neck in a manner that blocks or could block an arrestee's air passage; 3) compelling Defendant Anne Arundel County to adopt an explicit general order preventing officers from using force which potentially blocks an arrestee's airways or could potentially cause serious injury to an arrestee's cervical spine, and defining such force as "lethal force"; a4) compelling Defendant Anne Arundel County to adopt a general order preventing its officers from using potentially lethal force on handcuffed arrestees unless necessary to protect the life and safety of officers or the public; 5) compelling Defendant Anne Arundel County to adopt an explicit general order preventing officer from using any sort of ankle bends or twists on an arrestee; and 6) compelling Defendant Anne Arundel County to comply with § 21-904 of the Transportation Article of the Maryland Annotated Code, such that it would be improper to arrest an individual for fleeing and eluding when the officers are driving unmarked police vehicles, plus interest, the costs of this action, attorneys' fees, and such other and further relief as this Court deems just and proper under the circumstances.

**COUNT 8**
**Violation of 42 U.S.C. § 1983**
**Excessive Force**
**(Plaintiff v. Detective Daniel Reynolds in his Individual Capacity)**

130.    Plaintiff incorporates and realleges the foregoing paragraphs as if fully set forth herein.

131.    This cause of action is to redress the deprivation under color of statute, ordinance, regulation, policy, custom, practice or usage of a right, privilege and immunity secured to the Plaintiff by the Fourth and Fourteenth Amendment to the United States Constitution.

132.    Detective Reynolds, at all times relevant to this Complaint, worked as a law enforcement officer with the Anne Arundel County Police Department.

133.    Based on the allegations above, Defendant Reynolds, acting in his individual capacity, acted under color of State law and deprived Plaintiff of his clearly established rights protected by the Fourth and Fourteenth Amendments to the U.S. Constitution, said rights including, but not limited to the right to be free from excessive force; the right to be free from unreasonable seizures; freedom to be secure in one's person from unreasonable seizures; freedom from the deprivation of liberty without due process of the law; and freedom from the abuse of power by the police.

134.    Plaintiff had a protected property and liberty interest in his freedom, his ability to exercise his free will and domain over his person, to bodily integrity and personal security, and his ability to be free from unlawful and unwelcome seizure by the police.

135.    Defendants Reynolds deprived Plaintiff of these liberties and rights when he kneeled on Plaintiff's neck and slammed Plaintiff's head into the road, which resulted in injury to the Plaintiff.

WHEREFORE, Plaintiff demands judgment against Defendant Daniel Reynolds, individually as an officer of the Anne Arundel County Police Department in an amount

exceeding $75,000, plus interest, the costs of this action, attorneys' fees, and such other and further relief as this Court deems just and proper under the circumstances.

**COUNT 9**
**Violation of 42 U.S.C. § 1983**
**Excessive Force**
**(Plaintiff v. Defendants Anne Arundel County and Detective**
**Daniel Reynolds in his Official Capacity)**

136.    Plaintiff incorporates and realleges the foregoing paragraphs as if fully set forth herein.

137.    This cause of action is to redress the deprivation under color of statute, ordinance, regulation, policy, custom, practice or usage of a right, privilege and immunity secured to the Plaintiff by the Fourth and Fourteenth Amendment to the United States Constitution.

138.    While the Detectives violated Plaintiff's constitutional rights by using excessive force against him, Anne Arundel County committed a separate and distinct violation of Plaintiff's constitutional rights by authorizing, permitting, and/or allowing the use of force and/or restraint of Plaintiff's neck on or near his airway when Plaintiff did not pose a risk of deadly force and he was restrained by handcuffs.

139.    Defendant Reynolds' conduct, including the deprivation of constitutional rights and use of excessive force, arose from the County's unconstitutional policy, practice, and training authorizing the use of force on or near airways of restrained suspects.

140.    Additionally, Anne Arundel County violated Plaintiff's constitutional rights when it trained and/or permitted its officers to use a "knee strike" in the neck area of arrestees.

141.    On June 9, 2020, AAPD Chief Timothy J. Altomare released a list of "Frequently Asked Questions" about the AAPD's use of force, in response to widespread protests and

attention to police use of force, and particularly to strikes and restraints to the neck, following the murder of George Floyd by officers of the Minneapolis, Minnesota police department.

142.    In the FAQ, Chief Altomare states that the AAPD "does not teach any type of neck restraint," considers "force to the head and neck" to be "deadly force," and that AAPD officers are "trained throughout our entire career to avoid impacting or restricting the neck."

143.    Chief Altomare also claimed that the only circumstance under which a neck restraint is permissible is during the "active defense of human life in which no other option exists."

144.    Despite Chief Altomare's claims to the public, however,  the AAPD's Use of Force Policy, IC 401, is silent as to neck restraints or strikes to the neck, and mentions knee strikes only in passing as a "use of force" requiring a report. Altomore resigned on July 22, 2020, specifically stating that he did not wish to be a part of police reforms sought by this lawsuit to limit excessive force.  As the Anne Arundel Patch reported the next day:

> He is more concerned with Jarrells' demand for a court order to limit police force. If accepted, this order would ban on the use of unnecessary force against already-handcuffed people.
>
> "The flock needs protecting, the sheepdogs do that when the wolf shows up," Altomare wrote. "I am a sheepdog and I will not apologize for it. If society takes the teeth from its sheepdogs, there is simply more sheep for the slaughter."

145.    Anne Arundel County had no articulated policy or general order prohibiting an officer from placing his or her knee on someone's neck. It was not until after this incident, in which excessive force was used against Daniel, and the Anne Arundel County Police Chief at the time, Timothy Altomare, resigned that a policy prohibiting officers from kneeing on individuals' necks was adopted.

146.    Moreover, the Detectives clearly were not "actively defending human life" when they followed Plaintiff without cause, pulled Plaintiff over in a pretextual stop, ordered Plaintiff out of the vehicle at gunpoint despite having no reason to believe that Plaintiff posed any sort of threat at all—much less one requiring lethal force—threatened to Tase Plaintiff, arrested Plaintiff without suspicion of any crime, hauled Plaintiff out of the police vehicle where they had placed him, slammed him onto the ground facedown and in handcuffs, and—while Plaintiff was still restrained by handcuffs—used a knee to strike and restrain Plaintiff's neck.

147.    Contrary to Chief Altomare's assurance in the FAQ that officers are required to stop and report any excessive force, none of the other officers on scene put a stop to or reported Detective Reynolds's use of knee strikes and restraints to Plaintiff's neck. Additionally, Anne Arundel's policy and practice does not require individual officers to report their use of force. Instead, where multiple officers are involved in the use of force, only one of the participating officer fills out an online form for all of the officers who used force.  Moreover, the practice of the Anne Arundel County Police Department is not to file a use of force report when the office perceives that the subject of the force was not seriously injured.

148.    Moreover, on information and belief, no member of the AAPD, either on scene or after the fact, requested or demanded that Officer Reynolds or any of the four officers on scene explain the use of force, despite the fact that the Detectives stated in multiple arrest reports that they had used physical force to subdue Plaintiff, the fact that Plaintiff had been taken to the hospital, and the fact that photographs of Plaintiff in the AAPD's arrest file taken at the hospital clearly show lacerations and abrasions to Plaintiff's face.

149.    The use of force report completed by Detective Ranck failed to accurately reflect the use of force against Daniel. As the chain-of-command review made clear in this case, there is

no meaningful oversight of the use of force.  Indeed, the Department in this case did not react to the use-of-force until news media publicized the event a year later.

150.     Despite Chief Altomare's statement, the AAPD has no policy or procedure, written or unwritten, that restricts the use of knee strikes to or the restraint of an arrestee's neck.

151.     In the alternative, any such policy that the AAPD does have is neither sufficiently taught nor adequately enforced.

152.     AAPD officers are trained, authorized, and/or permitted to use knee strikes and restraints to an arrestee's neck area, despite the risk of serious injury or death publicly acknowledged by Chief Altomare.

153.     The Detectives used unreasonable and unnecessary force in the treatment of Plaintiff, thereby injuring him as alleged above in violation of his rights to due process and to be free from excessive force and unreasonable seizure, as protected by the Fourth and Fourteenth Amendments to the United States Constitution.

154.     During the commission of the foregoing acts, the Detectives were acting as agents of and within the scope of their employment by the County.

155.     As a result of the Detectives' actions, Plaintiff suffered damages, including but not limited to pain and suffering, assault, battery, mental and emotional distress, and deprivation of constitutional rights.

WHEREFORE, Plaintiff demands judgment against Defendants Anne Arundel County, Maryland and Detective Daniel Reynolds in his official capacity in an amount exceeding $75,000, as well as injunctive relief 1) enjoining Defendant Anne Arundel County from training, authorizing, permitting, or allowing the use of knee strikes in the neck area of arrestees; 2) enjoining Defendant Anne Arundel County from training, authorizing, permitting, or allowing its

officers to restrain an arrestee's neck in a manner that blocks or could block an arrestee's air passage; 3) compelling Defendant Anne Arundel County to adopt an explicit general order preventing officers from using force which potentially blocks an arrestee's airways or could potentially cause serious injury to an arrestee's cervical spine, and defining such force as "lethal force"; a4) compelling Defendant Anne Arundel County to adopt a general order preventing its officers from using potentially lethal force on handcuffed arrestees unless necessary to protect the life and safety of officers or the public; 5) compelling Defendant Anne Arundel County to adopt an explicit general order preventing officer from using any sort of ankle bends or twists on an arrestee; and 6) compelling Defendant Anne Arundel County to comply with § 21-904 of the Transportation Article of the Maryland Annotated Code, such that it would be improper to arrest an individual for fleeing and eluding when the officers are driving unmarked police vehicles, plus interest, the costs of this action, attorneys' fees, and such other and further relief as this Court deems just and proper under the circumstances.

## COUNT 10
### Violation of 42 U.S.C. § 1983
### Excessive Force
### (Plaintiff v. Detective Joshua Stinchcomb in his Individual Capacity)

156.     Plaintiff incorporates and realleges the foregoing paragraphs as if fully set forth herein.

157.     This cause of action is to redress the deprivation under color of statute, ordinance, regulation, policy, custom, practice or usage of a right, privilege and immunity secured to the Plaintiff by the Fourth and Fourteenth Amendment to the United States Constitution.

158.     Detective Stinchcomb, at all times relevant to this Complaint, worked as a law enforcement officer with the Anne Arundel County Police Department.

159.    Based on the allegations above, Defendant Stinchcomb, acting in his individual capacity, acted under color of State law and deprived Plaintiff of his clearly established rights protected by the Fourth and Fourteenth Amendments to the U.S. Constitution, said rights including, but not limited to the right to be free from excessive force; the right to be free from unreasonable seizures; freedom to be secure in one's person from unreasonable seizures; freedom from the deprivation of liberty without due process of the law; and freedom from the abuse of power by the police.

160.    Plaintiff had a protected property and liberty interest in his freedom, his ability to exercise his free will and domain over his person, to bodily integrity and personal security, and his ability to be free from unlawful and unwelcome seizure by the police.

161.    Defendant Stinchcomb deprived Plaintiff of these liberties and rights when he knelt on and twisted Daniel's legs and twisted Daniel's ankles, which resulted in injury to the Plaintiff.

WHEREFORE, Plaintiff demands judgment against Defendant Joshua Stinchcomb, individually as an officer of the Anne Arundel County Police Department in an amount exceeding $75,000, plus interest, the costs of this action, attorneys' fees, and such other and further relief as this Court deems just and proper under the circumstances.

**<u>COUNT 11</u>**
**Violation of 42 U.S.C. § 1983**
**Excessive Force**
**(Plaintiff v. Defendants Anne Arundel County and Detective**
**Joshua Stinchcomb in his Official Capacity)**

162.    Plaintiff incorporates and realleges the foregoing paragraphs as if fully set forth herein.

163.     This cause of action is to redress the deprivation under color of statute, ordinance, regulation, policy, custom, practice or usage of a right, privilege and immunity secured to the Plaintiff by the Fourth and Fourteenth Amendment to the United States Constitution.

164.     While the Detectives violated Plaintiff's constitutional rights by using excessive force against him, Anne Arundel County committed a separate and distinct violation of Plaintiff's constitutional rights by authorizing, permitting, and/or allowing the use of force on and/or restraint of Plaintiff's legs by Detective Stinchcomb kneeling on and bending Plaintiff's legs and twisting his ankles when Plaintiff did not pose a risk of deadly force and he was restrained by handcuffs.

165.     Defendant Stinchcomb's conduct, including the deprivation of constitutional rights and use of excessive force, arose from the County's unconstitutional policy, practice, and training authorizing the use of force on restrained suspects by twisting their legs and ankles.

166.     Anne Arundel County had no articulated policy or general order prohibiting an officer from using the type of pain compliance leg hold that was used by Detective Stinchcomb and no policy or general order prohibiting an officer from twisting the legs or ankles of a restrained suspect.

167.     The use of force report completed by Detective Ranck failed to accurately reflect the use of force against Daniel. As the chain-of-command review made clear in this case, there is no meaningful oversight of the use of force.  Indeed, the Department in this case did not react to the use-of-force until news media publicized the event a year later.

168.     The Detectives used unreasonable and unnecessary force in the treatment of Plaintiff, thereby injuring him as alleged above in violation of his rights to due process and to be

free from excessive force and unreasonable seizure, as protected by the Fourth and Fourteenth Amendments to the United States Constitution.

169.    During the commission of the foregoing acts, the Detectives were acting as agents of and within the scope of their employment by the County.

170.    As a result of the Detectives' actions, Plaintiff suffered damages, including but not limited to pain and suffering, assault, battery, mental and emotional distress, and deprivation of constitutional rights.

WHEREFORE, Plaintiff demands judgment against Defendants Anne Arundel County, Maryland and Detective Joshua Stinchcomb in his official capacity in an amount exceeding $75,000, as well as injunctive relief 1) enjoining Defendant Anne Arundel County from training, authorizing, permitting, or allowing the use of knee strikes in the neck area of arrestees; 2) enjoining Defendant Anne Arundel County from training, authorizing, permitting, or allowing its officers to restrain an arrestee's neck in a manner that blocks or could block an arrestee's air passage; 3) compelling Defendant Anne Arundel County to adopt an explicit general order preventing officers from using force which potentially blocks an arrestee's airways or could potentially cause serious injury to an arrestee's cervical spine, and defining such force as "lethal force"; a4) compelling Defendant Anne Arundel County to adopt a general order preventing its officers from using potentially lethal force on handcuffed arrestees unless necessary to protect the life and safety of officers or the public; 5) compelling Defendant Anne Arundel County to adopt an explicit general order preventing officer from using any sort of ankle bends or twists on an arrestee; and 6) compelling Defendant Anne Arundel County to comply with § 21-904 of the Transportation Article of the Maryland Annotated Code, such that it would be improper to arrest an individual for fleeing and eluding when the officers are driving unmarked police vehicles,

plus interest, the costs of this action, attorneys' fees, and such other and further relief as this Court deems just and proper under the circumstances.

## JURY DEMAND

Plaintiffs demand a trial by jury of any and all claims so triable.

/s/ Timothy F. Maloney
By: Timothy F. Maloney

/s/ Timothy F. Maloney
Timothy F. Maloney, CPF #86060102045
Alyse L. Prawde, CPF #1412180033
JOSEPH, GREENWALD & LAAKE, P.A.
6404 Ivy Lane, Suite 400
Greenbelt, Maryland 20770
301/220-2200 (tel.)
301/220-1214 (fax)
tmaloney@jgllaw.com
aprawde@jgllaw.com

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of October, 2021, a true and correct copy of the foregoing document was served on all counsel of record via the Court's e-filing system.

/s/ Timothy F. Maloney
Timothy F. Maloney