IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| DANIEL JARRELLS, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. GLR-21-2902 |
| ANNE ARUNDEL COUNTY, et al., | * | |
| Defendants. | * | |

\*\*\*

## <u>MEMORANDUM OPINION</u>

THIS MATTER is before the Court on Defendants Anne Arundel County, Maryland (the "County"), Joshua Shapiro, Joshua Stinchcomb, and Brian Ranck's Partial Motion to Dismiss the Amended Complaint (ECF No. 88) and the County's Motion to Dismiss, or in the alternative, Bifurcate Count 7 of the Amended Complaint (ECF No. 87). The Motions are ripe for disposition and no hearing is necessary. <u>See</u> Local Rule 105.6 (D.Md. 2021). For the reasons outlined below, the Court will grant the Motions in part and deny the Motions in part.

# I.    BACKGROUND[1]

## A.    Factual Background

On February 14, 2019, Plaintiff Daniel Jarrells, a self-identified African American man, was driving to his mother's house in a friend's car. (Am. Compl. ¶ 9, ECF No. 58). Jarrells' friend, Lamar Redfield, rode in the passenger's seat. (Id. ¶ 10). Jarrells pulled up to an intersection next to an unmarked black SUV driven by Defendants Daniel Reynolds and Joshua Shapiro, detectives in the Anne Arundel County Police Department ("AAPD"). (Id. ¶ 11). Reynolds and Shapiro decided to follow Jarrells, allegedly because the front and rear windshields of the two-door car Jarrells was driving "displayed a Lyft [ride-sharing service] sticker." (Id. ¶ 17).[2] They found this "suspicious" because "Lyft requires a four door vehicle." (Id.). Reynolds and Shapiro followed Jarrells for two miles before attempting to make a traffic stop. (Id. ¶ 16). According to Shapiro, "the basis for the stop was that they 'paced' [Jarrells'] car over the speed limit, and/or that [Jarrells] stopped the vehicle at a stop sign with his tires in front of the white line." (Id. ¶ 20). After Reynolds and Shapiro turned their sirens on, Jarrells slowed down and put on his hazard lights until he pulled over in front of his mother's home. (Id. ¶ 21).

---

[1] Unless otherwise noted, the Court takes the following facts from the Amended Complaint (ECF No. 58) and accepts them as true. See Erickson v. Pardus, 551 U.S. 89, 94 (2007).

[2] The Amended Complaint notes that the Statement of Probable Cause written the day after the incident does not include Reynolds and Shapiro's reason for following Jarrells. (Am. Compl. ¶ 15).

When Jarrells stopped, Reynolds and Shapiro ordered Jarrells and Redfield out of the car at gunpoint.[3] (Id. ¶ 26). Reynolds and Shapiro cited Jarrells' "'suspicious driving behavior,' his 'attempt to elude the traffic stop,' and their . . . knowledge that the car's owner . . . had been arrested for weapons and drug charges" as reasons for drawing their guns. (Id. ¶ 27). Both Jarrells and Redfield were placed in handcuffs and Jarrells was searched. (Id. ¶ 29). Neither of the men received an explanation for why they had been pulled over, ordered out of the car at gunpoint, or placed under arrest. (Id.).

Two more AAPD detectives, Defendants Joshua Stinchcomb and Brian Ranck, then arrived, although Reynolds and Shapiro had not called for backup. (Id. ¶ 30). Jarrells was placed in Stinchcomb's vehicle, but soon after, Ranck, Reynolds, and Stinchcomb pulled Jarrells out of the car. (Id.). In his arrest report, Shapiro alleges that Jarrells was removed from the car because he was kicking the window. (Id. ¶ 31). Ranck, Reynolds, and Stinchcomb immediately threw Jarrells to the ground. (Id. ¶ 32). Reynolds then put his knee on the back of Jarrells' neck as he lay face down on the pavement. (Id. ¶ 35). When Jarrells began to shift his body to get more comfortable, Reynolds grabbed Jarrells' head, pushed it into the ground, and slammed his knee into the back of Jarrells' neck.[4] (Id. ¶ 38). As Reynolds and Jarrells exchanged expletives, Stinchcomb twisted and then kneeled on Jarrells' legs.[5] (Id. ¶ 50). When Jarrells protested, "Reynolds put his full weight on

---

[3] The incident was recorded on video by a neighbor of Jarrells' mother. (Id. ¶ 34).

[4] Both Reynolds and Anne Arundel County have admitted that this conduct was an unnecessary and unreasonable use of force. (Id. ¶ 43). The County has also admitted that Jarrells did not appear to be a threat when he was on the ground. (Id. ¶ 45).

[5] Neither Reynolds' nor Stinchcomb's conduct are tactics taught in the Anne Arundel County Police Department Academy. (Id. ¶¶ 44, 51).

[Jarrells'] back and neck." (Id. ¶ 50). Jarrells told Reynolds that he could not breathe, but Reynolds told Jarrells he could breathe (Id. ¶ 55). After holding Jarrells in this position for several minutes, detectives arrested and strip searched Jarrells. (Id. ¶ 61). The strip search was allegedly based on Jarrells' failure to stop the car immediately. (Id.). All charges against Jarrells were ultimately disposed as nolle prosequi. (Id. ¶ 65).

On July 14 and 15, 2021, a trial board found Reynolds guilty of excessive force for slamming Jarrells' head into the ground but not for kneeling on Jarrells' neck. (Id. ¶ 69). Reynolds was suspended for twenty-five days and required to attend an anger management program and crisis intervention training assistance program. (Id. ¶ 70).

**B.   Procedural History**

Jarrells filed suit against Reynolds, Shapiro, Ranck, and the County in the Circuit Court for Anne Arundel County, Maryland on July 16, 2020. (Notice Removal ¶ 1, ECF No. 1). After discovery, Jarrells filed an Amended Complaint, naming Stinchcomb as a new Defendant and adding 42 U.S.C. § 1983 claims. (Id. ¶ 2). The case was removed to this Court on November 12, 2021. (ECF No. 1).

The County filed a Motion to Dismiss, or in the alternative, Bifurcate Count 7 of the Amended Complaint on December 10, 2021 (ECF No. 87). The County, Shapiro, Stinchcomb, and Ranck filed a Partial Motion to Dismiss the Amended Complaint on the same day. (ECF No. 88). Jarrells filed Oppositions to both Motions on December 27, 2021, (ECF Nos. 91, 92), and on January 17, 2022, the County and Defendants each filed a Reply (ECF Nos. 101, 102).

Defendants move to dismiss all counts against Defendant Brian Ranck. (Defs.' Partial Mot. Dismiss Am. Compl. ["Defs.' Mot."] at 4, ECF No. 88). Jarrells voluntarily withdrew all claims against Ranck, (Pl.'s Opp'n Defs.' Partial Mot. Dismiss Am. Compl. Req. Hr'g. ["Opp'n Defs.' Mot."] at 29, ECF No. 92), and the Court approved a stipulation of dismissal of Ranck on January 10, 2022, (ECF No. 99). Defendants also move to dismiss Counts 3, 4, 5, and 6 against the County on grounds of governmental immunity from tort liability. (Defs.' Mot. at 5). Jarrells voluntarily withdrew Counts 3, 4, 5, and 6 against the County. (Opp'n Defs.' Mot. at 29). The Court will thus grant the Motion as to those counts.

Following these dismissals and withdrawal of claims, the eleven-count Amended Complaint now includes the following counts: Excessive Force in violation of Article 24 of the Maryland Declaration of Rights against the County, Reynolds, and Stinchcomb (Count 1); Excessive Force and Deprivation of Liberty in violation of Article 26 of the Maryland Declaration of Rights against the County, Reynolds, and Stinchcomb (Count 2); Battery against Reynolds and Stinchcomb (Count 3); False Arrest against Reynolds, Stinchcomb, and Shapiro (Count 4); False Imprisonment against Reynolds, Stinchcomb, and Shapiro (Count 5); Intentional Infliction of Emotional Distress ("IIED") against Reynolds, Stinchcomb, and Shapiro (Count 6); Unconstitutional Policy and/or Training Authorizing the Use of Force On or Near Airways of Restrained Suspects in violation of Article 26 against the County (Count 7); Excessive Force in violation of 42 U.S.C. § 1983 against Reynolds in his individual capacity (Count 8); Excessive Force in violation of 42 U.S.C. § 1983 against the County and Reynolds in his official capacity (Count 9); Excessive Force in violation of 42 U.S.C. § 1983 against Stinchcomb in his individual

capacity (Count 10); and Excessive Force in violation of 42 U.S.C. § 1983 against the County and Stinchcomb in his official capacity (Count 11). (Am. Compl. ¶¶ 74–170). Jarrells seeks compensatory damages, attorneys' fees and costs, pre- and post-judgment interest, and injunctive relief. (Id. at 40–41).

## II.   <u>DISCUSSION</u>

### A.   <u>Standard of Review</u>

#### 1.   **Rule 12(b)(6) Standard**

The purpose of a Rule 12(b)(6) motion is to "test[] the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." King v. Rubenstein, 825 F.3d 206, 214 (4th Cir. 2016) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999)). A complaint fails to state a claim if it does not contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), or does not "state a claim to relief that is plausible on its face," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555). Though the plaintiff is not required to forecast evidence to prove the elements of the claim, the complaint must allege sufficient facts to establish each element. Goss v. Bank of Am., N.A., 917 F.Supp.2d

445, 449 (D.Md. 2013) (quoting Walters v. McMahen, 684 F.3d 435, 439 (4th Cir. 2012)), aff'd, 546 F.App'x 165 (4th Cir. 2013).

In considering a Rule 12(b)(6) motion, a court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. Albright v. Oliver, 510 U.S. 266, 268 (1994); Lambeth v. Bd. of Comm'rs, 407 F.3d 266, 268 (4th Cir. 2005) (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). But the court need not accept unsupported or conclusory factual allegations devoid of any reference to actual events, United Black Firefighters v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979), or legal conclusions couched as factual allegations, Iqbal, 556 U.S. at 678.

### 2.    Rule 42(b) Standard

Under Federal Rule of Civil Procedure 42(b), "the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims" for the following reasons: "convenience, to avoid prejudice, or to expedite and economize." "Notably, Rule 42(b) is disjunctive, meaning '[o]nly one of these criteria need be met to justify bifurcation.'" Johnson v. Balt. Police Dep't (Johnson I), 500 F.Supp.3d 454, 458 (D.Md 2020) (quoting Saxion v. Titan-C-Mfg., 86 F.3d 553, 556 (6th Cir. 1996)). "[T]rial courts must be given wide latitude in managing the litigation before them," including bifurcation of trial; however, the district court must not abuse its discretion. Dixon v. CSX Transp., Inc., 990 F.2d 1440, 1443 (4th Cir. 1993); see also Beasley v. Kelly, No. DKC-10-0049, 2010 WL 3221848, at *3 (D.Md. Aug. 13, 2010) ("The court has broad discretion in deciding whether to bifurcate claims for trial, and the exercise of that

discretion will be set aside only if clearly abused.") "A district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence." Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 405 (1990).

**B.**     **Analysis**

**1.     Intentional Infliction of Emotional Distress (Count 6)**

Defendants move to dismiss Count 6 against Stinchcomb and Shapiro for failure to state a claim upon which relief may be granted. (Defs.' Mot. at 9). To state a claim for IIED in Maryland, a plaintiff must allege four elements: (1) intentional or reckless conduct; (2) extreme and outrageous conduct; (3) a causal connection between the wrongful conduct and the emotional distress; and (4) severe emotional distress. See Harris v. Jones, 380 A.2d 611, 614 (Md. 1977); Brengle v. Greenbelt Homes, Inc., 804 F.Supp.2d 447, 452 (D.Md. 2011). "In Maryland, IIED claims are 'rarely viable' and, thus, subject to a heightened pleading standard." Davenport v. Maryland, 38 F.Supp.3d 679, 692–93 (D.Md. 2014) (quoting Bagwell v. Peninsula Reg'l Med. Ctr., 665 A.2d 297, 319 (Md.Ct.Spec.App. 1995)). Each of the four elements "must be pled and proved with specificity." Foor v. Juv. Servs. Admin., 552 A.2d 947, 959 (Md.Ct.Spec.App. 1989); accord Parker v. Ciena Corp., 787 F.App'x 817, 820 (4th Cir. 2019). A plaintiff cannot merely state that the elements exist. Id. Rather, he must allege specific facts to support each element, and "a deficiency in any one [element] is fatal." Id.

Here, Defendants contend that Jarrells does not allege facts sufficient to meet the heightened pleading standard. (Defs.' Mot. at 9). Specifically, Defendants argue that

Jarrells fails to allege facts showing that Defendants' conduct was extreme and outrageous, that Defendants' conduct caused Jarrells' emotional distress, and that Jarrells' emotional distress was severe. (Id. at 10). At bottom, the Court agrees that Jarrells fails to adequately plead that he experienced severe emotional distress and for that reason will dismiss the IIED claim.

### a.     Extreme and Outrageous Conduct

The second element of an IIED claim is satisfied when the conduct is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Harris, 380 A.2d at 614 (quoting Restatement (Second) of Torts § 46 cmt. d (Am. L. Inst. 1965)). In determining whether conduct is extreme and outrageous, courts consider "multiple factors, including the context in which the conduct occurred, the personality of the plaintiff and her susceptibility to emotional distress, and the relationship between the defendant and plaintiff." Brengle, 804 F.Supp.2d at 453; accord Figueiredo-Torres v. Nickel, 584 A.2d 69, 76 (Md. 1991). No one factor is dispositive. Byington v. NBRS Fin. Bank, 903 F.Supp.2d 342, 352 (D.Md. 2012). Furthermore, when the defendant is "in a peculiar position to harass the plaintiff, and cause emotional distress," courts will scrutinize his conduct more carefully. Harris, 380 A.2d at 615.

Here, Jarrells has adequately put forth facts demonstrating that Shapiro and Stinchcomb's conduct was extreme and outrageous. First, the context in which the incident occurred was a traffic stop for an alleged minor traffic violation. (Am. Compl. ¶ 19). But after Jarrells pulled over, Reynolds and Shapiro ordered Jarrells and Redfield out of the car

at gunpoint. (Id. ¶ 28). Stinchcomb bent and kneeled on Jarrells' legs while Reynolds kneeled on Jarrells' neck and pushed his face into the ground. (Id. ¶ 50). According to the Amended Complaint, this conduct was unprovoked. (Id. ¶ 31). Further, both Shapiro and Stinchcomb, as police officers, are in a "peculiar position" to harass Jarrells. In sum, Jarrells has alleged sufficient facts to show that Shapiro and Stinchcomb's conduct was extreme and outrageous.

### b.   Severe Emotional Distress

The final IIED element requires a plaintiff to allege "'a severely disabling emotional response' that includes 'with reasonable certainty the nature, intensity or duration of the alleged emotional injury.'" Vance v. CHF Int'l, 914 F.Supp.2d 669, 683 (D.Md. 2012) (quoting Manikhi v. Mass Transit Admin., 758 A.2d 95, 115 (Md. 2000)); see, e.g., Figueiredo-Torres, 584 A.2d at 76 (finding that plaintiff demonstrated severe emotional distress at the pleading stage by stating, among other things, that he had been hospitalized for emotional distress, suffered from depression and anxiety, lost vision in his left eye, and had to undergo psychological treatment); Brengle, 804 F.Supp.2d at 456 (finding that plaintiff adequately pleaded severe emotional distress by stating she experienced severe anxiety that prevented her from having a permanent home and eating and sleeping regularly). Here, Jarrells merely states that he "suffered severe emotional distress" as a result of Shapiro and Stinchcomb's conduct. (Am. Compl. ¶ 108). This conclusory recitation of the final element is not sufficient to satisfy the elevated pleading standard required of IIED claims. See Vance, 914 F.Supp.2d at 683 (dismissing IIED claim because "[t]he only allegations of injury [we]re that Plaintiffs have suffered and will continue to

suffer, severe emotional distress" (internal quotation marks omitted)). Because Jarrells has not adequately pleaded severe emotional distress, a necessary element of IIED, the Court will dismiss Count 6.[6]

### 2.    Stinchcomb (Counts 1, 2, 11)

Defendants move to dismiss Counts 1 and 2, in which Jarrells alleges state constitutional violations against Stinchcomb in his official capacity. (Defs.' Mot. at 11). Jarrells did not specify in the Amended Complaint whether he asserts Counts 1 and 2 against Stinchcomb in his individual or official capacity. (See Am. Compl. ¶¶ 74–83). In his Opposition, Jarrells states that he was "not asserting an official/individual dichotomy" in Counts 1 and 2. (Opp'n Defs.' Mot. at 29). Stinchcomb, in his individual capacity, filed an Answer to Counts 1 and 2 on December 10, 2021. (ECF No. 90). As such, the Court will dismiss Counts 1 and 2 as asserted against Stinchcomb in his official capacity. See O'Reilly v. Tsottles, No. GLR-18-3622, 2021 WL 424415, at *7 (D.Md. Feb. 8, 2021) ("It is customary practice in this Court to deem claims abandoned to the extent a plaintiff fails to respond to a motion to dismiss those claims.").

In Count 11, Jarrells asserts a claim for violations of 42 U.S.C. § 1983 against the County and against Stinchcomb in his official capacity. (See Am. Compl. ¶¶ 162–70). "A State is not a person within the meaning of § 1983." Will v. Mich. Dep't of State Police,

---

[6] Defendants also argue in their Motion that the IIED claim must be dismissed because the Amended Complaint includes no allegations "that would plausibly support a causal connection between the charge and any medical condition suffered by" Jarrells. (Defs.' Mot. at 10). But Defendants cite no case law to support the proposition that a medical condition is a required element of an IIED claim, nor is the Court aware of any such case. Regardless, Jarrells' IIED claim fails for the reasons set forth above.

491 U.S. 58, 64 (1989). And because "a suit against a state official in his or her official capacity . . . is no different from a suit against the State itself," officers acting in their official capacities are similarly not "'persons' under § 1983." Id. at 71; accord Wilson v. Detweiler, No. SAG-20-0869, 2020 WL 4053827, at *4 (D.Md. July 20, 2020). As such, the Court will dismiss Count 11 as applies to Stinchcomb.

### 3.    42 U.S.C. § 1983 Claims (Counts 9 and 11)

In Counts 9 and 11, Jarrells asserts claims under 42 U.S.C. § 1983 against the County. Defendants raise two alternative arguments in favor of the dismissal of Counts 9 and 11: (1) to the extent Jarrells intended to assert these excessive force claims directly against the County, the claims fail as a matter of law; or (2) to the extent Jarrells intended to bring Counts 9 and 11 against the County as Monell claims, the allegations in the Amended Complaint are insufficient to support them. (Defs.' Mot. at 7).

Construing the facts in the light most favorable to the non-moving party, the Court will treat Counts 9 and 11 as Monell claims. The Supreme Court's decision in Monell provides that a local government is generally not subject to suit under § 1983 for injuries inflicted by its employees. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978) (holding that a local government may not be sued under § 1983 for "an injury inflicted solely by its employees or agents"). But while a municipality "cannot be held liable solely because it employs a tortfeasor," it can be held liable for its own illegal acts. Owens v. Balt. City State's Att'y Off., 767 F.3d 379, 402 (4th Cir. 2014); see Monell, 436 U.S. at 694.

In Counts 9 and 11, Jarrells alleges that the County violated his Fourth and Fourteenth Amendment rights. (Am. Compl. ¶¶ 138, 140, 164, 166). Specifically, Jarrells

alleges that the County "committed a separate and distinct violation . . . by authorizing, permitting, and/or allowing the use of force." (Id. ¶¶ 138, 164). As Jarrells alleges the County committed an independent act, the Court will review Counts 9 and 11 as Monell claims.

### a.   Municipal Liability Standard

A municipality may be subject to suit under § 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." Monell, 436 U.S. at 694. All Monell claims must "(1) identify[] the specific 'policy' or 'custom;' (2) fairly attribut[e] the policy and fault for its creation to the municipality; and (3) find[] the necessary 'affirmative link' between [the] identified policy or custom and [the] specific violation." Spell v. McDaniel, 824 F.2d 1380, 1389 (4th Cir. 1987) (quoting City of Oklahoma City v. Tuttle, 471 U.S. 808, 822–24 (1985)).

A municipality may be held liable for four types of policies or customs: (1) "the decisions of a government's lawmakers," (2) "the acts of its policymaking officials," (3) "a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights," or (4) "practices so persistent and widespread as to practically have the force of law." Connick v. Thompson, 563 U.S. 51, 61 (2011).

"Although prevailing on the merits of a Monell claim is difficult, simply alleging such a claim is, by definition, easier." Owens, 767 F.3d at 403. The facts included in a complaint do not need to be "particularly detailed, and the chance of success need not be particularly high." Id. At the motion to dismiss stage for a Monell claim, "it will often be

the case that a plaintiff lacks specific details regarding the municipal actor's internal policies and training procedures before discovery." Johnson v. Balt. Police Dep't, No. ELH-19-698, 2020 WL 1169739, at *34 (D.Md. Mar. 10, 2020). "[T]he details of the alleged policy or custom . . . is a topic properly left to development through discovery." Id. (quoting Est. of Osuna v. Cnty. of Sanislaus, 392 F.Supp.3d 1162, 1174 (E.D.Cal. 2019)). A Monell claim fails to survive a motion to dismiss, however, when a plaintiff merely "recites the elements of [a] § 1983 cause of action." Owens, 767 F.3d at 403.

Here, Jarrells' appears to base liability on the third and fourth types of policies or customs: a failure to properly train and a persistent and widespread practice of constitutional violations. Defendants argue that Jarrells has not provided facts establishing the existence of a policy or custom attributable to the County that caused Jarrells' injury. (Defs.' Mot. at 8). The Court will address each in turn.

### b.    Failure to Train Claim

To state a failure to train claim, the plaintiff must allege facts that reveal: "(1) the nature of the training, (2) that the training was a 'deliberate or conscious' choice by the municipality, and (3) that the officer's misconduct resulted from said training." Jones v. Chapman, No. ELH-14-2627, 2015 WL 4509871, at *18 (D.Md. July 24, 2015) (quoting Lewis v. Simms, No. AW-11-2172, 2012 WL 254024, at *3 (D.Md. Jan. 26, 2012)); see also Connick, 563 U.S. at 61 (finding that to constitute a constitutional violation, a municipality's failure to train "must amount to 'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact'" (quoting City of Canton v. Harris, 489 U.S. 378, 388 (1989))).

### i.      Nature of the Training

A plaintiff must allege "more than bald assertions that police officers were not properly trained." <u>Jones</u>, 2015 WL 4509871, at *20. Rather, a plaintiff must assert facts demonstrating a "specific deficiency" with the training. See <u>Washington v. Balt. Police Dep't</u>, 457 F.Supp.3d 520, 533 (D.Md. 2020). Jarrells alleges that the County violated his constitutional rights through its "policy, practice, and training authorizing the use of" the force applied to Jarrells' neck (Count 9) and legs (Count 11). (Am. Compl. ¶¶ 138, 164).[7] Jarrells specifically notes that the AAPD's Use of Force Policy does not prohibit either type of force and mentions "knee strikes" only because their use requires a report. (<u>Id.</u> ¶ 144). If multiple officers are involved in using force, only one officer is required to complete a report, rather than each individual officer who used force. (<u>Id.</u> ¶ 147). Jarrells also alleges there is a practice within the AAPD of not filing a use of force report when the officer believes the victim of force was not "seriously injured." (<u>Id.</u>). In Jarrells' case, Ranck, not Reynolds or Stinchcomb, completed the use of force report, and it did not accurately reflect the use of force against Jarrells. (<u>Id.</u> ¶ 149). Jarrells further alleges that the AAPD's lack of response to the report indicates there is no departmental oversight of the use of force. (<u>Id.</u>). In the Court's view, these allegations are sufficient to allege the nature of the deficient training.

---

[7] With regard to the assertions against the County, Counts 9 and 11 differ only in the location of the force Jarrells experienced: his neck and legs.

ii.      **Deliberate or Conscious Choice**

Municipal liability may only arise from inadequate police training policies if the policymaker was deliberately indifferent to or recklessly disregarded the constitutional rights of citizens. Spell, 824 F.2d at 1390. "[M]ere negligence on the part of policymakers is not sufficient." Id.; see also Johnson v. Balt. Police Dep't, 452 F.Supp.3d 283, 309 (D.Md. 2020) ("[T]he municipality will only be liable if 'the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need.'" (quoting Harris, 489 U.S. at 390)). "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." Connick, 563 U.S. at 62 (quoting Bryan Cnty., 520 U.S. at 409). However, "in a narrow range of circumstances," plaintiffs may show deliberate indifference based on a single incident when "the constitutional violation at issue was the 'patently obvious' or 'highly predictable' consequence of the municipality's failure to provide additional specified training." Artiga Carrero v. Farrelly, 270 F.Supp.3d 851, 865 (D.Md. 2017) (quoting Connick, 563 U.S. at 64).

Jarrells argues that because several other officers saw and did not intervene or report the incident, Reynolds' and Stinchcomb's conduct must have been considered acceptable. (Opp'n Defs.' Mot. at 23). Jarrells asserts that this interpretation is bolstered by the fact that the AAPD did not react to the incident until it was publicized in the news a year later. (Am. Compl. ¶ 149). Although Jarrells was taken to the hospital and pictures of his injuries

were in AAPD files, no one asked for a report from Reynolds or Stinchcomb themselves after the incident. (Id. ¶ 148). A trial board hearing did not take place until almost a year and a half later. (Id. ¶ 68). Furthermore. Jarrells notes that "the AAPD's Use of Force Policy, IC 401, is silent as to neck restraints or strikes to the neck, and mentions knee strikes only in passing as a 'use of force' requiring a report." (Id. ¶ 116). At the pleading stage, the Court finds that Jarrells has adequately alleged that Reynolds' and Stinchcomb's conduct was the "'highly predictable' consequence" of the County's failure to train. Artiga Carrero, 270 F.Supp.3d at 865 (quoting Connick, 563 U.S. at 64). The Court thus agrees with Jarrells that he has sufficiently alleged that the inadequate training was a deliberate or conscious choice of the County.

### iii.    Causation

A plaintiff can only assert a failure to train claim if the specific training deficiency complained of is such, "given the manifest exigencies of police work, as to make occurrence of the specific violation a reasonable probability rather than a mere possibility." Spell, 824 F.2d at 1390. Moreover, "even if 'a particular officer may be unsatisfactorily trained,' that 'will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program.'" Grim v. Balt. Police Dep't, No. ELH-18-3864, 2019 WL 5865561, at *17 (D.Md. Nov. 8, 2019) (quoting Harris, 489 U.S. at 390–91). Jarrells alleges the "AAPD trained and/or permitted its officers to use a 'knee strike' in the neck area of arrestees." (Am. Compl. ¶ 140). Assuming this is true, officers are not prohibited from using the type of force Jarrells experienced. Given the frequent physical confrontations inherent in police work, this

failure in training would likely increase the chance that officers apply force to arrestees' knees and necks. Jarrells' arrest also involved alleged misconduct by at least four different police officers, as opposed to one officer, who may have been more likely to simply disregard his training. These allegations are sufficient at this stage in the litigation to establish causation. As Jarrells has adequately pleaded all elements of his failure to train claim, the Court will decline to dismiss the claim.

### c. Condonation Claim

"Under th[e] [condonation] theory of liability, a city violates § 1983 if municipal policymakers fail 'to put a stop to or correct a widespread pattern of unconstitutional conduct.'" Owens, 767 F.3d at 402 (quoting Spell, 824 F.2d at 1389). A plaintiff must allege facts that show "a 'persistent and widespread practice[] of municipal officials,' the 'duration and frequency' of which indicate that policymakers (1) had actual or constructive knowledge of the conduct, and (2) failed to correct it due to their 'deliberate indifference.'" Owens, 767 F.3d at 402 (quoting Spell, 824 F.2d at 1386–90). For example, in Jones v. Chapman, the plaintiff identified three separate instances of excessive force outside of his own interaction with law enforcement. 2015 WL 4509871, at *15; see also McDowell v. Grimes, No. GLR-17-3200, 2018 WL 3756727, at *5 (D.Md. Aug. 7, 2018) ("McDowell's assertions of regular occurrences of excessive force are factual allegations that, if true, could establish a 'persistent and widespread' pattern of practice of constitutional violations." (quoting Owens, 767 F.3d at 402)). Here, Jarrells does not mention any police misconduct outside of his own experience. (Am. Compl. ¶¶ 136–55). Further, Jarrells has identified no case law indicating that the single-incident exception may be applied to

18

condonation claims, nor is the Court aware of any such decision. Accordingly, Jarrells fails to plead a <u>Monell</u> claim under the condonation theory of liability.

In sum, Jarrells' <u>Monell</u> claims should survive dismissal to the extent they are premised on the County's failure to properly train AAPD officers.

### 4.    Article 26 Claim against County (Count 7)

In Count 7, Jarrells brings a claim against the County under Article 26 of the Maryland Declaration of Rights for the unconstitutional policy and/or training that authorized the use of force on or near the airways of restrained suspects. (Am. Compl. ¶ 109). Jarrells specifically alleges that the County violated "Jarrells' constitutional rights by authorizing, permitting, and/or allowing the use of force and/or restraint of Jarrells' neck on or near his airway when Jarrells did not pose a risk of deadly force, and he was restrained by handcuffs." (<u>Id.</u> ¶ 111). Additionally, Jarrells alleges that the "County violated Jarrells' constitutional rights when it trained and/or permitted its officers to use a 'knee strike' in the neck area of arrestees." (<u>Id.</u> ¶ 112).

The Maryland Court of Appeals has held that Article 26 is "in <u>pari materia</u> with the Fourth Amendment of the federal constitution." <u>Williams v. Prince George's Cnty.</u>, 685 A.2d 884, 894 (Md. 1996). Additionally, "the Maryland Constitution recognizes a 'pattern or practice' claim as part of its protections of citizens against unconstitutional actions of local government and its employees." <u>Prince George's Cnty. v. Longtin</u>, 19 A.3d 859, 889 (Md. 2011). A "pattern or practice claim" is a <u>Monell</u> claim under 42 U.S.C. § 1983. <u>See</u> <u>Monell</u>, 436 U.S. at 658. Accordingly, construing the facts in the light most favorable to

the non-moving party, the Court will treat Count 7 as a <u>Longtin</u> claim. As this Court

recently explained:

> The state analogue to a <u>Monell</u> claim under Maryland law is
> known as a <u>Longtin</u> claim. <u>See</u> <u>Rosa v. Bd. of Educ. of Charles</u>
> <u>Cnty.</u>, No. 11-02873-AW, 2012 WL 3715331, at *9 (D. Md.
> Aug. 27, 2012) ("<u>Longtin</u> claims are essentially Maryland's
> version of <u>Monell</u> claims."); <u>see also</u> <u>Prince George's Cnty. v.</u>
> <u>Longtin</u>, 19 A.3d 859 (2011). Thus, <u>Monell</u> and <u>Longtin</u> claims
> rise or fall together, and the Court need not undertake an
> independent analysis of the sufficiency of the latter. <u>See</u> <u>Krell</u>
> <u>v. Queen Anne's Cnty.</u>, No. JKB-18-637, 2018 WL 6523883,
> at *15 (D. Md. Dec. 12, 2018).

<u>Palma v. Montgomery Cnty.</u>, No. PX-21-1090, --- F.Supp.3d ---, 2022 WL 1092345, at *4

n.5 (D.Md. Apr. 12, 2022). As discussed above, Jarrells has adequately pleaded a <u>Monell</u>

claim under the failure to train theory of liability. Thus, his <u>Longtin</u> claim also survives.

Accordingly, the Court will deny Defendants' Motion to Dismiss Count 7.

**5.      Motion to Bifurcate**

The District of Maryland "has consistently held that in the context of Section 1983

claims, bifurcation of the <u>Monell</u> supervisory claims from the individual claims is

appropriate and often desirable." <u>Brown v. Bailey</u>, No. RDB-11-01901, 2012 WL 2188338,

at *4 (D.Md. June 13, 2012).

> Cases that contain <u>Monell</u> claims "are good candidates for
> bifurcation." <u>Beasley v. Kelly</u>, DKC-10-0049, 2010 WL
> 3221848, at *3 (D. Md. Aug. 13, 2010). Bifurcation can, in
> certain circumstances, advance the efficient and convenient
> resolution of the case because where there is no "initial finding
> that a government employee violated a plaintiff's
> constitutional rights, . . . no subsequent trial of the municipality
> is necessary." <u>Id.</u> In addition, bifurcation might spare the
> parties from expending valuable resources in discovery,

> because resolution of the claims as to the individual defendants
> may obviate the need to litigate the <u>Monell</u> claim. <u>Burgess v.</u>
> <u>Balt. Police Dep't</u>, RDB-15-0834, 2016 WL 1159200, at *1
> (D. Md. Mar. 23, 2016).

<u>Johnson I</u>, 500 F.Supp.3d at 460; <u>see also</u> <u>James v. Frederick Cnty. Pub. Sch.</u>, 441 F.Supp.2d 755, 762 (D.Md. 2006) (case bifurcated because "the viability of [plaintiff's] <u>Monell</u> claim depends upon whether [the Officer] used excessive force").

Here, Jarrells has pleaded excessive use of force claims against individual detectives. (<u>See, e.g.</u>, Am. Compl. ¶¶ 75, 80, 135, 138, 161, 168). Although the Court agrees that a conclusory statement by the County that the individual Defendants will be prejudiced is insufficient to establish that the County will suffer prejudice in the absence of bifurcation, all three factors of Federal Rule of Civil Procedure 42(b) do not need to be satisfied. See <u>Johnson I</u>, 500 F.Supp.3d at 458. The County argues that "[t]he claim in Count 7 against the 'inactive' Defendant Anne Arundel County, Maryland depends upon the validity of the claim that the individual defendants violated [Jarrells'] rights." (Def.'s Mot. Dismiss Alternative Bifurcate Count 7 Am. Compl. at 9, ECF No. 87). Indeed, if Jarrells cannot succeed on the merits of his claims against the individual Defendants, then Count 7 is moot. The Court has a history of bifurcating cases in this situation for convenience, expedience, and economy. See <u>Brown</u>, 2012 WL 2188338, at *4 (citing cases). The Court agrees that such an approach would promote convenience and expedite and economize this dispute.

Accordingly, the Court will grant the County's Motion to Bifurcate Count 7 and require Jarrells to first establish that the individual Defendants violated his constitutional rights before proceeding with Count 7 against the County.

### III.   <u>**CONCLUSION**</u>

For the foregoing reasons, the Court will grant in part and deny in part Defendants' Partial Motion to Dismiss the Amended Complaint (ECF No. 88). The Court will also grant in part and deny in part the County's Motion to Dismiss, or in the alternative, Bifurcate Count 7 of the Amended Complaint (ECF No. 87). A separate Order follows.

Entered this 1st day of September, 2022.


_____/s/_____
George L. Russell, III
United States District Judge