IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| DANIEL JARRELLS, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. GLR-21-2902 |
| ANNE ARUNDEL COUNTY, et al., | * | |
| Defendants. | * | |

\*\*\*

## **MEMORANDUM OPINION**

THIS MATTER is before the Court on Defendants Anne Arundel County, Maryland (the "County"), Joshua Shapiro, and Joshua Stinchcomb's Motion for Summary Judgment on Counts 2, 4 and 5 of the Amended Complaint (the "County Motion") (ECF No. 89) and Defendant Reynolds' Partial Motion for Summary Judgment ("Reynolds' Motion") (ECF No. 103). The Motions are ripe for disposition and no hearing is necessary. See Local Rule 105.6 (D.Md. 2021). For the reasons outlined below, the Court will grant in part and deny in part the County Motion and deny Reynolds' Motion.[1]

---

[1] Also pending before the Court is Plaintiff Daniel Jarrells' Motion for Leave to File Electronic Documents ("Motion for Leave") (ECF No. 104). The Motion for Leave is unopposed, and the documents appear germane to the pending Motions. Accordingly, the Court will grant the Motion for Leave.

# I.   BACKGROUND

## A.   **Factual Background**

On February 14, 2019, Plaintiff Daniel Jarrells, a self-identified African American man was driving to his mother's house in a friend's BMW two-door sedan (the "BMW"). (Am. Compl. ¶ 9, ECF No. 58). Jarrells' friend, Lamar Redfield, rode in the passenger's seat. (Id. ¶ 10). At the intersection of Route 3 and Johns Hopkins Road, Jarrells pulled up next to an unmarked black SUV driven by Defendant Daniel Reynolds, who was joined by Defendant Joshua Shapiro in the passenger seat. (Aff. Cpl. Joshua Shapiro ["Shapiro Aff."] ¶¶ 2–4, ECF No. 89-2). Both Reynolds and Shapiro were members of the Tactical Patrol Unit of the Anne Arundel County Police Department. (Dep. Tr. Joshua Shapiro ["Shapiro Dep."] at 19:6–7, 20:3–7, ECF No. 102-2). Reynolds and Shapiro aver that the front and rear windshields of the BMW Jarrells was driving "displayed a Lyft [ride-sharing service] sticker." (Shapiro Aff. ¶ 4; Dep. Tr. Daniel Reynolds ["Reynolds Dep."] at 39:4–9, ECF No. 102-1). They found this "suspicious" because "Lyft requires a four door vehicle," (Shapiro Aff. ¶ 4; Reynolds Dep. at 39:10–19), and began to follow the BMW, (Shapiro Dep. at 43:6–8). Shapiro ran the vehicle's tag number and identified the BMW's owner as Jordan Paul Owens. (Shapiro Dep. at 43:1–5; Shapiro Aff. ¶ 7). According to Shapiro, Maryland Judiciary Case Search revealed that Owens had pending charges for drug distribution and the use of a firearm in the commission of a drug trafficking offense. (Shapiro Aff. ¶¶ 8–9). Although Shapiro mentioned the Lyft sticker and Maryland Judiciary Case Search in his Affidavit and deposition in this case, he did not include any

details about them in the statement of probable cause for Jarrells' arrest. (Statement Probable Cause at 1, ECF No. 19-5).

The parties dispute many of the facts following Reynolds and Shapiro's initial observation of the BMW. According to Reynolds and Shapiro, after the traffic stop, Jarrells and Redfield behaved like they were going to flee. (Shapiro Dep. at 85:4–15; Reynolds Dep. at 86:22–6). Reynolds and Shapiro followed the BMW to a red traffic signal at the intersection of Route 3 and Waugh Chapel Road, where Shapiro observed the BMW's front tires stop in front of the painted white stop line. (Shapiro Aff. ¶ 10).[2] Reynolds did not see this alleged violation, (Reynolds Dep. at 69:12–17), and Jarrells asserts that he stopped the BMW with both tires behind the white stop line. (Aff. Daniel Jarrells Supp. Pl.'s Opp'n Defs.' Mots. Summ. J. Counts 2, 4, & 5 ["Jarrells Aff."] ¶ 8, ECF No. 93-1). The BMW then made a left turn onto Symphony Lane. (Shapiro Dep. at 55:12–13). Reynolds and Shapiro yielded to opposing traffic before turning. (Id. at 56:15–19). As they made the left turn, they observed the BMW begin to round a corner out of sight. (Id. at 57:1–4). They continued to follow the BMW for two- to three-tenths of a mile. (Id. at 57:12–15). They paced the car for one- to two-tenths of a mile, (id. at 59:1–6), and estimated its speed at approximately forty-five miles per hour. (Shapiro Aff. ¶ 14; Reynolds Dep. at 60:4–15). The speed limit on Symphony Lane is twenty-five miles per hour. (Shapiro Aff. ¶ 14). Jarrells contends that he followed the speed limit on Symphony Lane. (Jarrells Aff. ¶ 12).

_____

[2] Shapiro does not recall if his vehicle was behind or next to the BMW but asserts that he would have been able to tell that the tires were over the white line from either position. (Shapiro Dep. at 50:15–18).

In any event, the BMW then stopped at a stop sign. (Shapiro Aff. ¶ 15). As Shapiro and Reynolds approached the BMW, Shapiro states that he was able to see that both of its front tires were approximately twelve to eighteen inches past the white painted stop line, inside of the crosswalk. (Id.). Jarrells, on the other hand, asserts that he stopped the BMW behind the white line. (Jarrells Aff. ¶ 13).

As the BMW turned left, Reynolds activated the SUV's emergency lights. (Shapiro Aff. ¶ 16). The BMW slowed down but did not stop. (Id. ¶ 17). Within a few seconds of turning the lights on, Reynolds turned on the siren and possibly the air horn. (Reynolds Dep. at 77:3–78:1). According to Shapiro, Reynolds used the siren "intermittently" throughout the attempt to pull the BMW over. (Shapiro Dep. at 65:21–66:6). Neither detective indicated on the radio that they were in pursuit. (Reynolds Dep. at 78:15–17). Shapiro and Reynolds testified that they observed Redfield throw a small object out of the window as the BMW turned right onto April Dawn Way. (Shapiro Aff. ¶¶ 19–20; Reynolds Dep. at 83:6–8). Nonetheless, the statement of probable cause is silent as to this observation. (Statement Probable Cause at 1). Jarrells states that did not see Redfield throw anything out of the window. (Jarrells Aff. ¶ 22).

Ten minutes later, Reynolds and Shapiro returned to the area to search for the object and found a cigarette butt. (Shapiro Dep. at 76:12–77:2). Shapiro is not certain whether the object Redfield threw was a cigarette. (Id. at 77:3–5). As the BMW drove down April Dawn Way, Shapiro testified that he observed the passenger door open for approximately ten to fifteen seconds, (id. at 78:18–79:21), which he interpreted as an attempt to flee on foot. (Shapiro Aff. ¶ 21). Reynolds testified that he observed the passenger's door open

after the BMW came to a stop in the middle of April Dawn Way. (Reynolds Dep. at 85:22–86:6). Jarrells did not see Redfield open the passenger door. (Jarrells Aff. ¶ 21). After the BMW stopped, Shapiro and Reynolds contend that as Shapiro exited the SUV and approached the BMW, the BMW accelerated again, before finally pulling over. (Shapiro Aff. ¶¶ 22–23; Reynolds Dep. at 85:22–86:6). Jarrells, on the other hand, insists that he did not accelerate the BMW after he initially slowed down in response to the emergency lights. (Jarrells Aff. ¶ 20). Reynolds and Shapiro then drew their service weapons and ordered both Jarrells and Redfield out of the BMW. (Shapiro Aff. ¶ 24). As Jarrells exited the vehicle, Reynolds and Shapiro handcuffed him and placed him under arrest for fleeing and eluding. (Shapiro Dep. at 92:15–18, 98:2–10). After identifying Jarrells, Shapiro and Reynolds learned that there were two outstanding warrants for his arrest. (Shapiro Aff. ¶ 26).

Jarrells was cited for multiple traffic violations: (1) attempting to elude police by failing to stop; (2) failing to yield right-of-way to a police vehicle; (3) speeding on a highway; (4) failing to obey properly placed traffic control device instructions; (5) exceeding the posted speed limit; (6) failing to stop at a stop sign; (7) stopping on a crosswalk; and (8) failing to drive to a curb upon signal by a police vehicle. (Dist. Ct. Md. Notice Appear, ECF No. 89-6). According to the Anne Arundel County arrest report, Jarrells was also charged with (1) disorderly conduct; (2) resisting arrest; and (3) possession of CDS – not marijuana. (Arrest Report at 4, ECF No. 93-2). All the charges against Jarrells were ultimately disposed as <u>nolle prosequi</u>. (Am. Compl. ¶ 65).

**B.**     <u>**Procedural Background**</u>

Jarrells filed suit against Reynolds, Shapiro, Brian Ranck, and the County in the Circuit Court for Anne Arundel County, Maryland on July 16, 2020. (ECF No. 2). Defendants initially moved for summary judgment on August 28, 2020. (ECF No. 8). Shapiro, Ranck, and the County later filed a renewed motion for summary judgment on Counts 2, 4, and 5 on October 5, 2021. (ECF No. 57). After discovery, Jarrells filed an Amended Complaint on October 14, 2021, in which he named Stinchcomb as a new Defendant, dropped Ranck as a Defendant, and added claims under 42 U.S.C. § 1983. (ECF No. 58). Defendants removed the case to this Court on November 12, 2021. (ECF No. 1).

Stinchcomb joins Shapiro and the County in filing the Motion for Summary Judgment on Counts 2, 4 and 5 of the Amended Complaint on December 10, 2021. (ECF No. 89). The renewed motion for summary judgment is adopted and incorporated into the present Motion. (Defs.' Mem. at 2). Jarrells filed an Opposition on December 27, 2021, (ECF No. 93), and on January 17, 2022, the County, Shapiro, and Stinchcomb filed a Reply (ECF No. 102). On January 18, 2022, Reynolds filed a Partial Motion for Summary Judgment (ECF No. 103). Jarrells filed an Opposition on February 1, 2022, (ECF No. 105), and Reynolds filed a Reply on February 15, 2022, (ECF No. 108).

In his eleven-count Amended Complaint, Jarrells alleges: Excessive Force in violation of Article 24 of the Maryland Declaration of Rights against the County, Reynolds, and Stinchcomb (Count 1); Excessive Force and Deprivation of Liberty in violation of Article 26 of the Maryland Declaration of Rights against the County, Reynolds, and Stinchcomb (Count 2); Battery against the County, Reynolds, and Stinchcomb (Count 3);

False Arrest against the County, Reynolds, Stinchcomb, and Shapiro (Count 4); False Imprisonment against the County, Reynolds, Stinchcomb, and Shapiro (Count 5); Intentional Infliction of Emotional Distress ("IIED") against the County, Reynolds, Stinchcomb, and Shapiro (Count 6);[3] Unconstitutional Policy and/or Training Authorizing the Use of Force On or Near Airways of Restrained Suspects in violation of Article 26 against the County (Count 7); Excessive Force in violation of 42 U.S.C. § 1983 against Reynolds in his individual capacity (Count 8); Excessive Force in violation of 42 U.S.C. § 1983 against the County and Reynolds in his official capacity (Count 9); Excessive Force in violation of 42 U.S.C. § 1983 against Stinchcomb in his individual capacity (Count 10); and Excessive Force in violation of 42 U.S.C. § 1983 against the County and Stinchcomb in his official capacity (Count 11). (Am. Compl. ¶¶ 74–170). Jarrells seeks compensatory damages, attorneys' fees and costs, pre- and post-judgment interest, and injunctive relief. (Id. at 40–41).

## II.   DISCUSSION

### A.   Standard of Review

In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the nonmovant, drawing all justifiable inferences in that party's favor. Ricci v. DeStefano, 557 U.S. 557, 586 (2009) (quoting Scott v. Harris, 550 U.S. 372, 380 (2007)); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Summary judgment is proper when the movant demonstrates, through "particular parts of materials

---

[3] As discussed in a separate Memorandum Opinion filed simultaneously with this Opinion, Jarrells has voluntarily dismissed Counts 3, 4, 5, and 6 against the County.

in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a), (c)(1)(A). Significantly, a party must be able to present the materials it cites in "a form that would be admissible in evidence," Fed.R.Civ.P. 56(c)(2), and supporting affidavits and declarations "must be made on personal knowledge" and "set out facts that would be admissible in evidence," Fed.R.Civ.P. 56(c)(4).

Once a motion for summary judgment is properly made and supported, the burden shifts to the nonmovant to identify evidence showing there is genuine dispute of material fact. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986). The nonmovant cannot create a genuine dispute of material fact "through mere speculation or the building of one inference upon another." Othentec Ltd. v. Phelan, 526 F.3d 135, 141 (4th Cir. 2008) (quoting Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985)).

A "material fact" is one that might affect the outcome of a party's case. Anderson, 477 U.S. at 248; see also JKC Holding Co. v. Wash. Sports Ventures, Inc., 264 F.3d 459, 465 (4th Cir. 2001). Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248; accord Hooven-Lewis, 249 F.3d at 265. A "genuine" dispute concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. Anderson, 477 U.S. at 248. If the

nonmovant has failed to make a sufficient showing on an essential element of his case where he has the burden of proof, "there can be 'no genuine [dispute] as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986) (quoting Anderson, 477 U.S. at 247).

**B.    Analysis**

As an initial matter, Reynolds' Motion adopts and incorporates by reference the arguments set forth in the County Motion. (See Mem. Supp. Reynolds' Partial Mot. Summ. J. ["Reynolds Mem."] at 1, ECF No. 103-1). The one partially distinct argument Reynolds advances through his Motion is that Jarrells has failed to introduce facts sufficient to create a genuine dispute of material fact as to whether his race motivated Defendants' actions. (Id. at 2–3). The Court has not relied on discriminatory animus or any similar theory in resolving either Motion in Jarrells' favor. Accordingly, the Court will consider Reynolds' Motion as essentially joining in the County Motion. The Court's conclusions of law with respect to the County Motion will therefore apply equally to Reynolds' Motion.[4]

---

[4] Reynolds sets forth a series of additional arguments in his Reply that did not appear in his Motion. (See generally Def. Reynolds' Reply Pl.'s Opp'n Partial Mot. Summ. J., ECF No. 22). The Court will not consider these arguments in resolving Reynolds' Motion. See Clawson v. FedEx Ground Package Sys., Inc., 451 F.Supp.2d 731, 734 (D.Md. 2006) ("The ordinary rule in federal courts is that an argument raised for the first time in a reply brief or memorandum will not be considered."); Rose v. Harloe Mgmt. Corp., No. GLR-16-761, 2017 WL 193295, at *6 n.3 (D.Md. Jan. 17, 2017) ("By failing to raise and argue [a] point in their initial Motion, Defendants waived it."); Sher v. Luxury Mortg. Corp., No. ELH-11-3656, 2012 WL 5869303, at *9 n.11 (D.Md. Nov. 19, 2012) (concluding defendant's argument was waived because defendant did not raise it until reply brief).

Defendants seek summary judgment in their favor as to Jarrells' claims of (1) false arrest (Count 4); (2) false imprisonment (Count 5); and (3) deprivation of liberty under Article 26 of the Maryland Declaration of Rights (Count 2 – in part). As "[t]he elements of false arrest and false imprisonment are identical," Heron v. Strader, 761 A.2d 56, 59 (Md. 2000), the Court's analysis of Jarrells' false arrest claim applies equally to his claim of false imprisonment. The Court will analyze the Article 26 claim separately.

### 1.    Defendant Stinchcomb

Preliminarily, it is undisputed that Stinchcomb did not effect Jarrells' arrest. (See Aff. Joshua Stinchcomb ¶ 3, ECF No. 89-5). Accordingly, no reasonable jury could find that he is liable to Jarrells for false arrest or a violation of Article 26. Thus, the Court will grant the Motion as to Stinchcomb.

### 2.    False Arrest and False Imprisonment

To prevail on a claim of false arrest, a plaintiff must prove three elements: "1) the deprivation of the liberty of another; 2) without consent; and 3) without legal justification." Heron, 761 A.2d at 59. Legal justification is "judged by the principles applicable to the law of arrest." Montgomery Ward v. Wilson, 664 A.2d 916, 926 (Md. 1995) (quoting Great Atl. & Pac. Tea Co. v. Paul, 261 A.2d 731, 738 (Md. 1970)). "Therefore . . . the liability of a police officer for false [arrest] will ordinarily depend upon whether or not the officer acted within his legal authority to arrest." Id.

Defendants do not dispute that Jarrells' liberty was deprived without his consent. (See generally Defs.' Mem.). Instead, Defendants set forth two alternative arguments supporting their contention that Reynolds and Shapiro had legal justification for depriving

Jarrells of his liberty without his consent. First, they argue that certain undisputed facts provided Shapiro and Reynolds with reasonable articulable suspicion to conduct an investigatory traffic stop, whereupon the two active warrants for Jarrells' arrest were discovered. (Id. at 8, 10). Second, Defendants argue that Jarrells' arrest was legally justified because Shapiro and Reynolds had probable cause to believe that Jarrells had committed misdemeanors in their presence. (Id. at 9). Jarrells disputes the facts giving rise to Defendants' reasonable articulable suspicion and probable cause. (Resp. Opp'n Defs.' Mot. Summary Judgment ("Opp'n") at 8–10, ECF No. 18). The Court will address each argument in turn.

### a.   Reasonable Articulable Suspicion

Defendants first argue that they had reasonable articulable suspicion supporting an investigatory stop of Jarrells. (Defs.' Mem. at 10). The stop allowed them to identify Jarrells and discover two open warrants for his arrest, providing them with legal justification to make the arrest. (Id.). An investigatory stop of a citizen, known as a Terry stop, "must be supported by reasonable articulable suspicion that the individual is engaged in criminal activity." United States v. Black, 707 F.3d 531, 537 (4th Cir. 2013) (citing Terry v. Ohio, 392 U.S. 1, 21 (1968)). "Reasonable suspicion to initiate a brief investigative traffic stop requires 'a particularized and objective basis for suspecting the particular person stopped of criminal activity.'" United States v. Feliciana, 974 F.3d 519, 523 (4th Cir. 2020) (quoting Kansas v. Glover, 140 S.Ct. 1183, 1187 (2020)). "[T]he detaining officer . . . [must] 'either articulate why a particular behavior is suspicious or logically demonstrate, given the surrounding circumstances, that the behavior is likely to be

indicative of some more sinister activity than may appear at first glance.'" United States v. Williams, 808 F.3d 238, 246 (4th Cir. 2015) (quoting United States v. Foster, 634 F.3d 243, 248 (4th Cir. 2011)). Once a police officer has a reasonable, articulable suspicion for a traffic stop—e.g., because the driver committed a moving violation—the stop does not offend the Fourth Amendment, even if the police made the stop for the purpose of an investigation unrelated to the given reason. Whren v. United States, 517 U.S. 806, 813 (1996); Partlow v. State, 24 A.3d 122, 129 (Md.Ct.Spec.App. 2011) (finding that stop for traffic violations was justified even though the actual motivation for the stop was a drug investigation).

Defendants list six "undisputed" facts that gave rise to Reynolds and Shapiro's reasonable articulable suspicion that the driver of the BMW was involved in criminal activity: (1) the two-door BMW had a Lyft sticker; (2) the BMW's registered owner was the subject of an open indictment; (3) the BMW stopped over the white stop line and exceeded the speed limit; (4) Redfield threw an object out of the passenger window; (5) the BMW accelerated after Shapiro exited the SUV to approach the BMW; and (6) there were two open warrants for Jarrells' arrest at the time of the stop. (Defs.' Mem. at 10).[5]

It is undisputed that there were Lyft stickers on the front and rear windshields of the BMW, (Shapiro Aff. ¶¶ 5–6), and that its registered owner, Jordan Owens, was the subject

---

[5] Reynolds and Shapiro did not learn the identity of the BMW's driver until after they arrested Jarrells. (Reynolds Dep. at 42:4–17; Shapiro Dep. at 106:13–17). As such, Jarrells' open warrants do not go to their reasonable articulable suspicion.

of an open indictment. (Id. ¶¶ 7, 9). Defendants concede, however, that those two facts alone were not enough to give rise to a reasonable articulable suspicion.

> [COUNSEL FOR PLAINTIFF]: All right. So it was correct that at that point [after noticing the Lyft sticker and learning the registered owner was under indictment] you did not believe you had reasonable articulable suspicion; is that correct?
>
> [REYNOLDS]: At that time, no.

(Reynolds Dep. at 52:6–9). Instead, Reynolds and Shapiro decided to "find a reason to do a pretext stop for the car." (Id. at 49:3–10). The facts justifying the pretext stop are in dispute. As to the first violation, stopping over the white stop line, Shapiro cannot say conclusively that the SUV was next to the BMW. Jarrells asserts that he was not over the white line. Accordingly, a jury could find that if the SUV were in fact behind the BMW at the time of the stop, it would be implausible to see whether the BMW was stopped over the line. Similarly, a jury could determine that Shapiro and Reynolds' estimate of the BMW's speed is unreliable. As to the remaining violations, Jarrells denies them, and a factfinder may find him more credible than Reynolds or Shapiro. Accordingly, Jarrells has identified at least one genuine factual dispute as to whether he committed each of the acts that formed the basis for Reynolds and Shapiro's proffered reasonable articulable suspicion and, in turn, justified their investigatory stop of Jarrells. As such, Defendant's first argument fails.

### b.   Probable Cause

Defendants also argue that their arrest of Jarrells was legally justified because they had probable cause to believe that Jarrells had committed misdemeanors in their presence.

(Defs.' Mem. at 9).[6] In Maryland, "[a] police officer who has probable cause to believe that a felony or misdemeanor is being committed in the presence or within the view of the police officer may arrest without a warrant any person whom the police officer reasonably believes to have committed the crime." Md. Code Ann., Crim. Proc. § 2-202(b). A violation of the Maryland Vehicle Law is considered a misdemeanor unless the violation is a felony or punishable by a civil penalty. Md. Code. Ann., Transp. § 21–101(a). An officer has probable cause for an arrest when the "facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person . . . in believing, in the circumstances shown, that the suspect has committed an offense." Brown v. Lott, No. 21-6928, 2022 WL 2093849, at *1 (4th Cir. June 10, 2022) (quoting Humbert v. Mayor & City Council of Balt. City, 866 F.3d 546, 555 (4th Cir. 2017)). "Probable cause 'is an objective test,' and courts 'examine the facts within the knowledge of arresting officers to determine whether they provide a probability on which reasonable and prudent persons would act.'" Blue v. Batth, No. GJH-15-1024, 2017 WL 4162244, at *4 (D.Md. Sept. 18, 2017) (quoting United States v. Gray, 137 F.3d 765, 769–70 (4th Cir. 1998)).

"A court's task on summary judgment is not to assess credibility or weigh the evidence." Queen v. Prince George's Cnty., 188 F.Supp.3d 535, 542–43 (D.Md. 2016). Instead, in determining whether "an officer had legal authority to make a warrantless arrest

---

[6] Defendants cite State v. Roshchin, 130 A.3d 453 (Md. 2016), to support their contention that an arrest is legally justified if the arrestee commits a misdemeanor in the officer's presence. (Defs.' Mem. at 9). The facts of this case, however, are easily distinguishable from Roshchin. In Roshchin, there was no dispute as to whether the plaintiff had committed the misdemeanor. 130 A.3d at 457. Here, there are two competing versions of events.

for a non-felony, the court must ask if, in the light most favorable to the plaintiff, a fact-finder could infer the plaintiff was not committing the charged crime." <u>Ross v. Early</u>, 899 F.Supp.2d 415, 430 (D.Md. 2012); <u>see, e.g.,</u> <u>Okwa v. Harper</u>, 757 A.2d 118, 134 (Md. 2000) (holding that "the question is not simply whether [plaintiff] was committing the misdemeanor of disorderly conduct in the presence of Appellees," but rather, "whether a trier of fact looking at the facts in the light most favorable to [plaintiff] could infer reasonably that [plaintiff] was not committing disorderly conduct"); <u>Burno-Whalen v. Maryland</u>, No. GLS-15-564, 2019 WL 3323186, at *5 (D.Md. July 23, 2019) ("Because a dispute exists regarding whose version of events is more credible, a jury must decide this issue."); <u>Queen</u>, 188 F.Supp.3d at 542 ("[W]ere a jury to find [plaintiff's witness'] testimony more credible, then, . . . [the officer] could not establish that he had either probable cause or legal justification for arrest.").

Again, viewing the facts in the light most favorable to Jarrells, a reasonable finder of fact could conclude that Jarrells did not commit the traffic violations for which he was arrested. Jarrells avers that he never stopped the BMW over the white stop line, (Jarrells Aff. ¶¶ 11, 13), did not exceed the speed limit, (Dep. Tr. Daniel Jarrells ["Jarrells Dep."] at 96:20–97:1, ECF No. 93-3), and did not accelerate the BMW after Shapiro approached the car, (Jarrells Aff. ¶ 20). He also testified that he did not see Redfield throw an object out of the window or open the passenger door. (Jarrells Dep. at 107:13–21). Were a jury to

find Jarrells more credible than Defendants on these disputes of fact, Defendants would be unable to establish legal justification for depriving Jarrells of his liberty.[7]

Genuine disputes of material fact exist as to whether Defendants had legal justification to detain Jarrells. Thus, the Court cannot enter judgment on Jarrells' false arrest and false imprisonment claims. Accordingly, the Court will deny the Motions as to Counts 4 and 5.

### 3.    Article 26 of the Maryland Declaration of Rights

In Count 2, Jarrells asserts, among other things, that the County, Reynolds, and Stinchcomb deprived Jarrells of his right under Article 26 of the Maryland Declaration of Rights to be free from unlawful seizure. (Am. Compl. ¶ 80). As the Motion has been granted as to Stinchcomb, the Court's analysis of this count pertains only to the County and Reynolds.

---

[7] Defendants, relying on Myers v. State, 909 A.2d 1048 (Md. 2006), also assert that "even if there were no justification at all for the initial decision to arrest," in Maryland, "the discovery by the police of outstanding arrest warrants sufficiently dissipates the taint of any illegal traffic stop." (Defs.' Mem. at 12). Defendants misapply Myers. In Myers, the Maryland Court of Appeals held that although the officer lacked reasonable articulable suspicion to stop Myers' vehicle, the "taint" of that illegal seizure "was dissipated" by the discovery of valid warrants for Myers' arrest. 909 A.2d at 1068. Accordingly, the court held that "evidence obtained during the search of Myers and his vehicle was admissible as a search incident to a lawful arrest." Id. Thus, Myers deals with the admissibility of evidence, not the tort of false arrest. Myers does not suggest, as Defendants intimate, that the discovery of an outstanding warrant retroactively creates probable cause for or justifies an illegal stop. Indeed, the Maryland Court of Special Appeals has expressly found the opposite. See State v. Donaldson, 108 A.3d 500, 506 (Md.Ct.Spec.App. 2015) ("[A] constitutionally defective search cannot be justified after the fact by information unknown to the officer at the time of the warrantless search. Accordingly, the fact that appellee was on parole does not validate Detective Wisniewski's search that was conducted without probable cause."). Accordingly, the Court rejects this argument against Jarrells' false arrest and false imprisonment claims.

"Article 26 . . . protects the same rights as the Fourth Amendment to the United States Constitution, and states that 'all warrants, without oath or affirmation, to search suspected places, or to seize any person or property, are grievous and oppressive.'" <u>Bost v. Bradds</u>, No. SAG-12-2544, 2013 WL 5308275, at *9 (D.Md. Sept. 18, 2013) (quoting Md. Const. Decl. of Rights, Art. 26); <u>see also</u> <u>Richardson v. McGriff</u>, 762 A.2d 48, 56 (Md. 2000). An individual's rights under Article 26 are violated if he or she is arrested without probable cause or stopped without reasonable articulable suspicion. <u>See</u> <u>Ross</u>, 899 F.Supp.2d at 431; <u>Strickland v. Carroll Cnty.</u>, No. ELH-11-00622, 2012 WL 401075, at *23 (D.Md. Feb. 7, 2012); <u>State v. Green</u>, 826 A.2d 486, 494 (Md. 2003); <u>State v. Williams</u>, 934 A.2d 38, 46 (Md. 2007).

For the reasons discussed above, there is a genuine dispute of material fact as to the existence of reasonable articulable suspicion or probable cause justifying Jarrells' detention. As such, the Court will deny the Motions as to Count 2.

### III.   CONCLUSION

For the foregoing reasons, the Court will grant in part and deny in part Defendants the County, Shapiro, and Stinchcomb's Motion for Summary Judgment on Counts 2, 4 and 5 of the Amended Complaint (ECF No. 89). The Court will also deny Reynolds' Partial Motion for Summary Judgment (ECF No. 103). A separate Order follows.

Entered this 1st day of September, 2022.

_____/s/_____
George L. Russell, III
United States District Judge
